[No. 46421.  En Banc.  July 15, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD
JERRY MARTIN, *Petitioner*.

2

*Roy N. Howson* and *Michael A. Frost,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Gregory P. Canova, Senior Deputy,* and *Dennis R. Nollette, Deputy,* for respondent.

*Timothy K. Ford,* amicus curiae.

STAFFORD, J.—In this case we are concerned with a defendant's right to plead guilty to a charge of premeditated murder in the first degree (hereinafter first degree murder) and the consequences of such a plea.

Petitioner, Donald Martin, asserts a right to plead guilty to a charge of first degree murder and thus avoid the possible imposition of the death penalty resulting from a jury trial. Respondent State contends that petitioner cannot plead guilty to first degree murder or, alternatively, that after pleading guilty, the special sentencing procedures set

forth in RCW 10.94 authorize the possible imposition of the death penalty.

As discussed below, however, it is clear the present death penalty statute does not prevent a defendant from exercising the right to plead guilty to any crime with which he or she is charged. It is equally clear that after pleading guilty to first degree murder, a defendant is no longer subject to the possible imposition of the death penalty under RCW 10.94. Consequently we reject the State's contentions.

A brief review of the facts is necessary to bring the statutory issues into focus. On July 3, 1979, Donald Martin was arraigned on a charge of first degree murder in the death of Ivy Brown. Martin orally pleaded guilty and defense counsel presented the court with Martin's unsigned "Statement of Defendant on Plea of Guilty" pursuant to CrR 4.2(g).

Defense counsel also informed the court he had advised Martin that, as a matter of law, the maximum sentence imposable following a plea of guilty was life imprisonment with the possibility of parole. *See* RCW 9A.32.040(3); RCW 9.95.115. The court was asked to so rule on the legal consequences of the guilty plea. The State argued, however, that it had 30 days after arraignment within which to file a notice of intent to request the death penalty. RCW 10.94-.010. Further, the State urged the court to withhold action on the requested ruling to enable it to seek the death penalty.

The arraignment was continued and on July 17, 1979, the trial judge refused to accept Martin's guilty plea on the sole ground that the State's right to request the death penalty prevented such an admission of guilt. Accordingly, Martin made no plea to the charge at issue.

On July 20, the State filed an amended information in which Martin was charged with first degree murder in both the Brown death and the death of John Haasager. Notice of intent to request the death penalty was filed in both cases. Martin was arraigned on the amended information on July 23. Since the trial court had refused to accept his earlier plea of guilty in the Brown case, Martin stood mute and

the court entered a plea of not guilty for him in the Haasager case.

The trial court proceedings were stayed pending a motion for discretionary review in this court. Martin continues to assert a right to plead guilty to the charge of first degree murder. This plea, he contends, will result in the imposition of a maximum sentence of life imprisonment with a possibility of parole and thereby avoid the possibility of having a jury impose the death sentence. Three basic issues are presented: (1) whether, under the existing law of this state, petitioner may plead guilty to first degree murder; (2) if he can plead guilty, whether a special sentencing jury as specified in RCW 10.94 may consider imposition of the death penalty provided by RCW 9A.32.040(1); and (3) the nature of the penalty imposable when a defendant pleads guilty to first degree murder as well as the application of RCW 9A.32.040(3) and RCW 9.95.115.

## I
### Right To Plead Guilty

At the outset the State contends petitioner does not have a right to plead guilty to first degree murder. We do not agree. While a defendant does not have a constitutional right to plead guilty, it is well established that the State may confer such a right by statute or by other means. *North Carolina v. Alford,* 400 U.S. 25, 38 n.11, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). In this state such a right has been established by Supreme Court rule.[1] CrR 4.2(a) provides for the types of pleas which may be accepted at arraignment.

A defendant may plead not guilty, not guilty by reason of insanity or guilty.

---

[1]We also note that RCW 10.40.060 entitles the defendant to 1 day after arraignment in which to plead to the indictment or information. The statute provides:

"In answer to the arraignment, the defendant may move to set aside the indictment or information, or he may demur or plead to it, and is entitled to one day after arraignment in which to answer thereto if he demand it."

Although the State appears to argue to the contrary, we have been informed of no statute or rule of court which grants a trial court authority to decline a plea of guilty made competently, knowingly, voluntarily, unconditionally, unequivocally and on advice of counsel. Moreover, unlike the law in some states, our rules and statutes nowhere suggest that prosecutorial approval is required before a defendant may plead guilty. Accordingly, we hold that in this state, a criminal defendant has the right to plead guilty unhampered by a prosecuting attorney's opinions or desires.

■ The State next contends that insofar as CrR 4.2(a) may appear to be inconsistent with RCW 10.94 (the Washington death penalty act) the criminal rule governing guilty pleas is impliedly overruled by the statutory death penalty scheme. The argument is not well taken. The State's analysis rests on an unsubstantiated assumption that the legislature must have intended to repeal CrR 4.2(a). Implied repeals are not favored, however. *Jenkins v. State,* 85 Wn.2d 883, 886, 540 P.2d 1363 (1975); *Tardiff v. Shoreline School Dist.,* 68 Wn.2d 164, 411 P.2d 889 (1966). This is particularly true where, as here, CrR 4.2(a) does not conflict with RCW 10.94.

■ In oral argument, the State relied on the second clause of RCW 10.01.060 which expands the methods of assessing guilt to include trial by a judge except in capital cases:

> [E]xcept in capital cases, where the person informed against . . . for a crime is represented by counsel, such person may, with the assent of the court, waive trial by jury and submit to trial by the court.

This court has long interpreted the clause as *preventing* a defendant upon whom the death penalty might be imposed from waiving a jury trial in favor of a trial before a court. *State v. Baker,* 78 Wn.2d 327, 474 P.2d 254 (1970); *Brandon v. Webb,* 23 Wn.2d 155, 160 P.2d 529 (1945). The clause thus limits the *trial options* available to a defendant in capital cases. The clause does not, however, affect the

other methods of assessing guilt set forth in the first clause of RCW 10.01.060:

> No person informed against . . . for a crime shall be convicted thereof, unless by admitting the truth of the charge in his plea, by confession in open court, or by the verdict of a jury, accepted and recorded by the court . . .

We have never interpreted RCW 10.01.060 to prohibit a defendant charged with a capital offense from pleading guilty. Indeed, the first clause of RCW 10.01.060 supports the rule that a defendant may, in fact, plead guilty. This reasoning is supported by RCW 10.49.010 in effect in 1951 when the second clause of RCW 10.01.060 was adopted. RCW 10.49.010 clearly anticipated guilty pleas by defendants charged with murder. It provided:

> if the defendant plead guilty to a charge of murder, *a jury shall be impaneled to* . . . determine the degree of murder and the punishment therefor.

(Italics ours.)[2] *See State v. Horner,* 21 Wn.2d 278, 150 P.2d 690 (1944).

To adopt the State's suggestion that RCW 10.01.060 may somehow be expanded to prevent a capital defendant from pleading guilty would require judicial legislation and result in the rejection of years of prior practice under RCW 10.01.060 and RCW 10.49.010. We find that RCW 10.01.060 does not prevent a defendant charged with a capital offense from pleading guilty to the crime with which he or she is charged.

■ The State next contends Martin's plea of guilty was not "unconditional". Without question the plea was dependent upon a correct judicial interpretation of the statutory scheme. Yet, it would be unwarranted to consider as "conditional" a guilty plea which can be accepted only upon a correct interpretation of the law. To hold otherwise would improperly limit a defendant's right to be correctly

---

[2]It should be noted RCW 10.94.020(2) does not provide that "*a* jury shall be impaneled" (italics ours) as was formerly the case in RCW 10.01.060. Rather, the current statute provides "the trial judge shall *reconvene the same trial jury*". (Italics ours.)

informed of the possible sentencing consequences of the plea before waiving his or her right to a jury trial. A defendant has a right to be informed of the consequences of his or her plea of guilty before the plea is accepted. CrR 4.2; *Woods v. Rhay,* 68 Wn.2d 601, 605, 414 P.2d 601 (1966). Martin stood ready to enter an unconditional plea of guilty to first degree murder had the trial court correctly informed him that, pursuant to RCW 9A.32.040(3) and RCW 9.95.115, the maximum sentence imposable was life imprisonment with the possibility of parole.

We note in passing that an "unconditional" plea is not to be equated with an "unequivocal" plea. In *Woods v. Rhay, supra* at 605, we held that a guilty plea must be "freely, unequivocally, intelligently and understandingly made in open court by the accused person with full knowledge of his legal and constitutional rights and of the consequences of his act." A plea is "equivocal" "whenever a defendant attempts to make a plea which by its very wording couples a protestation of innocence with an assertion of guilt . . ." *State v. Stacy,* 43 Wn.2d 358, 363, 261 P.2d 400 (1953); *see State v. Mullin,* 66 Wn.2d 65, 66, 400 P.2d 770 (1965); *State v. Knutson,* 11 Wn. App. 402, 404, 523 P.2d 967 (1974); *State v. Watson,* 1 Wn. App. 43, 45, 459 P.2d 67 (1969). It is clear Martin's proffered plea was not equivocal.

II
SPECIAL SENTENCING IN GUILTY PLEA CASES
UNDER RCW 10.94

The State alternatively contends the trial judge properly refused to accept Martin's guilty plea because a capital defendant remains subject to the death penalty even upon a plea of guilty. It is asserted we should imply the existence of a special sentencing provision in which the death penalty could be imposed in guilty plea cases. This, it is suggested, could be accomplished by the impaneling of a special jury to assess punishment, similar to that provided for in RCW 10.94.020(2). This argument is without merit for two reasons. First, it stems from and is dependent upon

a series of cases decided at a time when the state statutory scheme permitted guilty pleas in capital cases and required only that *a* jury be subsequently impaneled to determine the degree of murder and the death penalty issue. *E.g., State v. Baker,* 78 Wn.2d 327, 334, 474 P.2d 254 (1970). Since RCW 10.94 now specifically requires that the *same trial jury be reconvened* to decide the issue of death, the prior cases are wholly inapposite. Second, the plain language of RCW 10.94.020(2) clearly forecloses the possibility of impaneling a special jury to decide the death penalty issue after a capital defendant has pleaded guilty. RCW 10.94.020(2) provides that if "the *trial jury* returns a verdict of murder in the first degree . . . the trial judge shall *reconvene* the *same trial jury* to determine" whether the death penalty will be imposed. (Italics ours.) The statute's mandate is clear. The *same trial jury* must be *reconvened* to determine the death issue. The proposed special substitute jury would be neither the "trial jury" which had returned a first degree murder verdict nor the "same trial jury" "reconvened" as mandated by the statute. Thus, there simply is no current statutory provision that authorizes the impaneling of a special jury to decide the death penalty issue when a capital defendant pleads guilty.

■ Clearly the legislature did not anticipate the possibility that an accused might plead guilty to a charge of first degree murder. Thus, it simply failed to provide for that eventuality. As attractive as the State's proposed solution may be, we do not have the power to read into a statute that which we may believe the legislature has omitted, be it an intentional or an inadvertent omission. *Auto Drivers Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 421, 598 P.2d 379 (1979); *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978); *Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 403, 573 P.2d 10 (1977). The statutory hiatus is unfortunate. Nevertheless, it would be a clear judicial usurpation of legislative power for us to correct that legislative oversight.

In the final analysis since, on a plea of guilty to first degree murder, a trial judge cannot "reconvene the same trial jury" there is simply no statutory means provided by which the death penalty can be imposed.

## III
### THE NATURE OF THE IMPOSABLE PENALTY

The trial court should have informed Martin that under existing law the maximum penalty on a plea of guilty to first degree murder is life imprisonment with a possibility of parole. RCW 9A.32.040(3); RCW 9.95.115. As noted previously, the more severe provisions of RCW 10.94 and RCW 9A.32.040(1) and (2) only apply to those cases in which a trial judge *can reconvene the same trial jury.*

Assuming the trial court was satisfied the guilty plea was made competently, knowingly and voluntarily, it should have accepted Martin's plea of guilty to the Brown murder charge. The case is therefore remanded for the rearraignment of Martin on the charge of first degree murder in the Brown case and for further proceedings consistent with this opinion.

WRIGHT, BRACHTENBACH, DOLLIVER, and WILLIAMS, JJ., concur.

HOROWITZ, J. (specially concurring)—I concur in the conclusions of the majority opinion for the reasons independently considered, which are next set forth.

This case principally considers a defendant's right to plead guilty to a charge of first degree murder and the consequences of such a plea.

The petitioner, Donald Jerry Martin, asserts a right to plead guilty to first degree murder and thus, under the provisions of Washington's death penalty act, RCW 10.94, avoid the possible imposition of the death penalty after a jury trial. Respondent State argues that the defendant in a capital case cannot plead guilty or, alternatively, that after the defendant has pleaded guilty a special sentencing procedure must exist to allow imposition of the death penalty

in appropriate cases. The State bases its argument on implied repeal of judicial court rules and a misreading of RCW 10.01.060.

I therefore cannot agree with the State. A thorough consideration of the historical, legislative, and constitutional aspects of the defendant's right to plead guilty and the State's right to trial make it clear that Washington's present death penalty statute does not impair the defendant's traditional right, sought to be exercised by Martin in this case under CrR 4.2(a), to plead guilty to the crime with which he is charged. It is equally clear that RCW 10.94 is an unconstitutional sentencing scheme because it is violative of the defendant's right to trial by jury on the charge of first degree murder. *United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968).

A brief review of the facts will bring into focus the statutory and constitutional issues which must be decided in this case.

On July 3, 1979, the petitioner Martin was arraigned in King County Superior Court on a charge of first degree murder in the death of Ivy Brown. Martin appeared at the arraignment prepared to plead guilty if the court would advise him, pursuant to CrR 4.2(d), that the maximum sentence he could receive on a plea of guilty would be life imprisonment with possibility of parole. RCW 9A.32.040(3); 9.95.115. Martin asserted that as a matter of law life imprisonment is the maximum sentence imposable on a guilty plea because Washington's death penalty statute does not explicitly provide a procedure for imposition of the death penalty after a plea of guilty.

Arguing that RCW 10.94.010 gave the prosecutor 30 days after arraignment to file a notice of intent to request the death penalty, the prosecutor urged the court not to deliver such an assurance. The State asserted a right to preclude the defendant from pleading guilty or a right to seek the death penalty regardless of his plea.

The arraignment was continued to allow further briefing on the issue thus raised. On July 17, 1979, the trial judge

declined to accept Martin's guilty plea, stating that the prosecutor's right to request the death penalty prevented the proffered admission of guilt. Accordingly, no plea has been entered to this charge for the murder of Ivy Brown. On July 20, 1979, the prosecutor filed death penalty requests in the Brown murder case and in the murder of John Haasager, with which Martin was charged on the same date in an amended information charging additional counts not included in the original information. Martin was arraigned on the amended information on July 23, 1979. Martin pleaded not guilty to all of the new charges but the Haasager murder charge, on which he stood mute because of the court's refusal to accept his earlier guilty plea in the Brown murder case. The court therefore entered a not guilty plea for him.

The proceedings in the trial court were stayed pending a motion for discretionary review in this court. Defendant continues to assert a right to plead guilty and thus avoid the death penalty. In fact, the defendant's obvious reason for the plea is the defendant's ability to avoid the death penalty if he pleads guilty to first degree murder. The question implicit in his proffered plea is whether a statutory scheme which prevents imposition of the death sentence on defendants who plead guilty unconstitutionally penalizes the exercise of defendant's right to trial by jury on the charge of first degree murder. This case, in which the defendant attempts to enter an unbargained–for plea, raises the constitutional issue even more clearly than did *Jackson, supra,* in which the violation of the defendant's constitutional rights in this type of case was established even though the defendant had entered no plea at all. *See State v. Funicello,* 60 N.J. 60, 286 A.2d 55, 70 (1972) (Francis, J., dissenting). "A case brought before this court should be governed by the applicable law even though the attorneys representing the parties are unable or unwilling to argue it." *Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 623, 465 P.2d 657 (1970). The question remains, too,

through the remand of Martin's prosecution on both murder charges brought against him. A "not guilty" plea was entered for him on the latter Haasager murder charge. To avoid the possibility that an unconstitutional death sentence will be imposed, I therefore later consider the constitutionality of RCW 10.94.

## I
### RIGHT TO PLEAD GUILTY

Few cases have considered a criminal defendant's right to plead guilty to the crime with which he is charged. Analytically, adoption of the State's assertion that it can prevent the defendant from pleading guilty in effect creates a governmental "right" to jury trial which the law has never recognized.

The right to jury trial has been the subject of extensive judicial comment. The right to jury trial has historically been a personal right of the defendant intended to be asserted against the State. Blackstone speaks of the trial by jury as the Englishman's "grand bulwark of his liberties" placed "between the liberties of the people and the prerogative of the Crown." 4 W. Blackstone, *Commentaries on the Laws of England* *349. The State could not assert a right to jury trial. Indeed, at earliest common law, the defendant could not be forced to go before a jury, although the alternative was a tortuous prison sentence. 1 W. Holdsworth, *History of English Law* 326 (6th ed. 1938). The United States Supreme Court in *Duncan v. Louisiana,* 391 U.S. 145, 155, 20 L. Ed. 2d 491, 88 S. Ct. 1444 (1968) stated that the "right to jury trial is granted to criminal defendants in order to prevent oppression by the Government."

These conceptions of the right to jury trial are inconsistent with any intrinsic governmental right to force the unwilling defendant to jury trial, since the jury system itself was established for the individual's, not the State's benefit.

A defendant's right to plead guilty is not absolute, as is, for example, his right to put the State to its proof at trial.

*See, e.g., Corbitt v. New Jersey,* 439 U.S. 212, 223, 58 L. Ed. 2d 466, 99 S. Ct. 492, 499 (1978) ("The States and the Federal Government are free to abolish guilty pleas and plea bargaining"); *North Carolina v. Alford,* 400 U.S. 25, 38 n.11, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970) ("Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted . . . although the States may by statute or otherwise confer such a right."); *Lynch v. Overholser,* 369 U.S. 705, 719, 8 L. Ed. 2d 211, 82 S. Ct. 1063 (1962) ("This does not mean, of course, that a criminal defendant has an absolute right to have his guilty plea accepted by the court."). As noted by the United States Supreme Court in *Alford,* however, the State may confer on the defendant a right to plead guilty. In Washington, the arraignment and plea system establish such a right and facilitate the defendant's plea. CrR 4.2(a) provides that the "defendant may plead not guilty, not guilty by reason of insanity or guilty" at arraignment; RCW 10.40.060 requires the defendant to plead within 1 day of arraignment.

Our rules do not explicitly state when the trial court may decline to accept a plea. However, unlike provisions in some other states, Washington rules and statutes nowhere suggest that prosecutorial approval is required before a defendant may plead guilty.

Thus, the criminal defendant in Washington has a right to plead guilty unhampered by the prosecutor's opinions or desires. The State suggests that RCW 10.94 may impliedly overrule CrR 4.2(a) if the statutory death penalty scheme is inconsistent with the criminal rule on guilty pleas. But nothing in RCW 10.94 is inconsistent with the defendant's right to plead guilty. The State's analysis rests on an unverified assumption that the legislature must have intended to repeal CrR 4.2(a). Implied repeals are to be avoided, *Jenkins v. State,* 85 Wn.2d 883, 886, 540 P.2d 1363 (1975), especially in a case such as this in which the

relevant provisions of RCW 10.94, CrR 4.2(a), and the earlier procedural statute RCW 10.01.060 do not conflict.

RCW 10.01.060 sets out various methods of proving guilt. The statute contains two phrases. The first, enacted as Rem. Rev. Stat. § 2309 in 1909 and present in little–modified language in the law of this state since 1854, provides three different methods of assessing the defendant's guilt:

> No person informed against or indicted for a crime shall be convicted thereof, unless by admitting the truth of the charge in his plea, by confession in open court, or by the verdict of a jury, accepted and recorded by the court . . .

This provision merely reaffirms the general rule that the defendant may plead guilty.

The State relies on the second clause of RCW 10.01.060. The provision, an amendment dating from 1951, expands the methods of assessing guilt to include trial by a judge except in capital cases:

> [E]xcept in capital cases, where the person informed against or indicted for a crime is represented by counsel, such person may, with the assent of the court, waive trial by jury and submit to trial by the court.

This court has interpreted the statute as amended to prevent the defendant upon whom the death penalty might be imposed from waiving jury trial in favor of trial before a court. *Brandon v. Webb,* 23 Wn.2d 155, 160 P.2d 529 (1945); *State v. Baker,* 78 Wn.2d 327, 474 P.2d 254 (1970). It thus limits the trial options available to the capital case defendant.

But the clause *does not,* as erroneously asserted by the State, affect the other two methods of assessing guilt set out in RCW 10.01.060—the guilty plea and confession in open court. This court has never interpreted RCW 10.01-.060 to prohibit the capital defendant from pleading guilty. Indeed, former RCW 10.49.010, in effect in 1951 when the clause was enacted, implicitly anticipates the guilty pleas of murder defendants. That statute provided that "if the defendant plead guilty to a charge of murder, a jury shall

be impaneled to . . . determine the degree of murder and the punishment therefor." *See State v. Horner,* 21 Wn.2d 278, 150 P.2d 690 (1944).

To now interpret RCW 10.01.060 as contended by the State to fill the claimed gap in RCW 10.94 and prevent the capital defendant from pleading guilty would have the effect of enacting a new statute that is inconsistent with decades of practice in this state. Murder defendants have pleaded guilty for decades under prior capital sentencing schemes. Defendants continue to plead guilty under the provisions of Washington's present death penalty statute. Nothing in RCW 10.01.060 prevents the defendant in a capital case from asserting the benefits of this state's general rules allowing the criminal defendant to plead guilty to the crime with which charged. Thus, petitioner Martin should have been allowed to plead guilty to the Brown murder charge if the court could be satisfied that his plea was knowing and voluntary. He then would have been sentenced to life imprisonment with possibility of parole. RCW 9A.32.040(3); 9.95.115.

The State next contends that Martin's plea was not unconditional. The defendant's plea did rely on a correct interpretation of the statutory scheme that prevents imposition of the death penalty when the defendant pleads guilty. But to describe his request as a condition which made his proffered plea not unconditional would require either an unwarranted extension of the rules limiting the court's acceptance of guilty pleas to those pleas which actually freely acknowledge guilt or an unjustified limitation of the defendant's right, established by court rule and the constitution, to know the possible sentencing consequences of his guilty plea before waiving his rights to jury trial, to remain silent, and to confront his accusers. CrR 4.2; *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969).

Doubtless it is not intended that the word "unconditional" be equated with "unequivocal."

A guilty plea "must be freely, unequivocally, intelligently and understandingly made in open court by the accused person with full knowledge of his legal and constitutional rights and of the consequences of his act." *Woods v. Rhay,* 68 Wn.2d 601, 605, 414 P.2d 601 (1966). A plea is "equivocal", and cannot be accepted by the court, "whenever a defendant attempts to make a plea which by its very wording couples a protestation of innocence with an assertion of guilty . . ." *State v. Stacy,* 43 Wn.2d 358, 363, 261 P.2d 400 (1953). The courts of this state have always refused a plea as "equivocal" only when the defendant raises factual doubt as to his guilt while attempting to plead. *See State v. Mullin,* 66 Wn.2d 65, 66, 400 P.2d 770 (1965) ("the defendant made statements indicating a protestation of innocence"); *State v. Knutson,* 11 Wn. App. 402, 404, 523 P.2d 967 (1974) ("a plea of guilty may *not* be accepted if ·it is accompanied by equivocation by the defendant as to his actual guilt"); *State v. Watson,* 1 Wn. App. 43, 45, 459 P.2d 67 (1969) ("comments . . . evidence a possible claim of self–defense and an assertion that defendant's actions were justified. A plea of 'guilty' coupled with a claim of justification is equivocal"). This characterization obviously does not apply to Martin's proffered plea in this case.

The defendant expressed no unwillingness to acknowledge his responsibility for the homicide; he merely required and requested the court to inform him of the sentencing consequences of his plea, *i.e.,* life imprisonment with possibility of parole. RCW 9A.32.040(3); 9.95.115. If the State objects to Martin's attempts to ascertain the maximum punishment should he plead guilty, it is clear that defendant had a right to be informed of the sentence which might be imposed after his acknowledgment of guilt, and thus his plea could not be considered "conditional" for this reason. The court must inform the defendant of the consequences of his plea of guilty before the plea can be accepted. CrR 4.2; *Woods v. Rhay, supra.* Had the trial court correctly advised him that the maximum sentence imposable on a plea of guilty to first degree murder is life imprisonment

with possibility of parole, the defendant could and would have entered an unconditional guilty plea.

## II
### SPECIAL SENTENCING PROCEEDINGS

The State contends that, if the defendant can plead guilty to first degree murder, the trial judge still did not err in refusing to accept Martin's plea because he remained subject to the death penalty. The prosecutor argues that a special sentencing provision in which the death penalty can be imposed must be implied to determine the punishment of the pleading defendant. However, an appropriate analysis of Washington's death penalty statute, RCW 10.94, cannot accommodate such a special sentencing provision. RCW 10.94.020(2) provides that "the same trial jury" that "returns a verdict of murder" shall "reconvene" to determine whether the death penalty will be imposed. If guilt is determined by plea rather than by jury verdict, the jury cannot be "reconvened" to assess punishment. Thus it appears that when a guilty plea to first degree murder is entered and accepted, the death penalty cannot be imposed. The statutory scheme does not state what sentencing procedure is to be followed when a guilty plea is entered.

The prosecutor suggests that a special jury be impaneled to assess punishment when the defendant pleads guilty. He cites cases requiring the impaneling of a sentencing jury in cases in which the defendant pleads guilty. *E.g., State v. Baker,* 78 Wn.2d 327, 334, 474 P.2d 254 (1970). But the present death penalty scheme is unlike that considered in this court's earlier cases requiring the jury to determine punishment in murder cases even when the defendant had pleaded guilty. Unlike the first degree murder statutes then in effect, no such provision for impaneling a special sentencing jury now exists.

It has been suggested that former RCW 10.49.010 may provide support for a special sentencing procedure to determine punishment in first degree murder cases. But as

next demonstrated, that statute clearly does not apply to this situation under the new death penalty statute, RCW 10.94.

RCW 10.49.010 is inconsistent with the scheme of RCW 10.94 and is inadequate to constitutionally allow the jury to assess the death penalty if considered alone. RCW 10.94-.020(2) quite clearly anticipates only that the trial judge shall reconvene "the *same* trial jury [which returns a verdict of murder in the first degree] to determine in a separate special sentencing proceeding" whether the death penalty should be assessed." (Italics mine.) The rest of the statute concerns how that "same" jury shall engage in the deliberation, and provides no guidance for the seating, presentation of evidence to, or deliberation of a special sentencing jury of the sort urged by the State. The provisions of RCW 10.49.010 also clearly do not provide adequate guidance for that procedure.

The United States Supreme Court was asked in *United States v. Jackson*, 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968) to infer a special sentencing procedure where none was provided by statute. The Supreme Court refused to take on that legislative task:

> [E]ven on the assumption that the failure of Congress to [expressly authorize the infliction of capital punishment upon defendants convicted without a jury] here was wholly inadvertent, it would hardly be the province of the courts to fashion a remedy. Any attempt to do so would be fraught with the gravest difficulties . . .
>
> It is one thing to fill a minor gap in a statute—to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality.

*United States v. Jackson, supra* at 579–80. *See also Gregg v. Georgia*, 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976).

In addition, the legislative history of the present death penalty statute shows that the legislature expressly rejected a proposed provision that would have authorized the impaneling of a capital sentencing jury in cases in which the defendant pleads guilty. House Bill 615, the original version of the statute, provided that: "If the trial jury has been waived, or if the defendant pleaded guilty to murder in the first degree, the death penalty proceeding shall be conducted before a jury impaneled for that purpose and such jury cannot be waived." House Bill 615, § 68. In enacting the bill, the legislature eliminated this provision. *See* RCW 10.94.020.

The significance of this rejection should not be overlooked in ascertaining legislative intent. Consideration of the legislative history of an enactment has long been held to be a legitimate method of determining the legislature's intent. *Ropo, Inc. v. Seattle,* 67 Wn.2d 574, 409 P.2d 148 (1965); *State ex rel. Fair v. Hamilton,* 92 Wash. 347, 159 P. 379 (1916). The majority in *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 536 P.2d 157 (1975), acknowledged the value in appropriate circumstances of considering sequential drafts of a bill. *Hama Hama Co. v. Shorelines Hearings Bd., supra* at 450. Unlike the enactment considered in that case, RCW 10.94 is not "replete with inconsistencies, errors, and apparent oversights," and thus it is clear some insight can be gained from examining the death penalty statute's legislative history. It is presumed that members of the legislature were aware of the state of the law and of prior drafts of the bill at the time RCW 10.94 was enacted. *See State v. Fenter,* 89 Wn.2d 57, 569 P.2d 67 (1977); *State ex rel. Fair v. Hamilton, supra* at 352; 2A C. Sands, *Sutherland's Statutes and Statutory Construction* § 48.04, at 197 (4th ed. 1973). It therefore is presumed that the legislature did not intend to allow a special sentencing procedure for infliction of the death penalty on a first degree murder defendant who pleads guilty. There is no evidence which overcomes this presumption.

Regardless of the message to be inferred from the legislative history of RCW 10.94, it is uncontroverted that the legislature provided no other means of establishing a special sentencing jury in cases in which the defendant chooses to plead guilty to first degree murder. Omissions from statutes are presumed to be intentional, and implication of a special sentencing procedure not provided for in RCW 10.94 is therefore inappropriate. It is not this court's function to supply a claimed omission in the content of legislation. *Department of Labor & Indus. v. Cook,* 44 Wn.2d 671, 269 P.2d 962 (1954); *In re Phillips' Estate,* 193 Wash. 194, 74 P.2d 1015 (1938). As demonstrated above, the legislature did not rely on the existence of a special sentencing procedure in former RCW 10.49.010 in eliminating the proposed special sentencing procedure in House Bill 615, § 68.

The inappropriateness of the analysis advanced by the State cannot be overemphasized. To adopt the State's position, we would have to find in the structure of RCW 10.94 either an absolute prohibition of the defendant's traditional right to plead guilty or an implied provision for a special sentencing procedure if the defendant is allowed to plead guilty. It should first be noted that implication of a special sentencing procedure will have the practical effect of prohibiting guilty pleas, since no lawyer would advise his client to take such a plea where he is faced with a possible death penalty. But beyond that practical effect, the analysis violates one of the cardinal rules of statutory construction:

> The majority is apparently convinced that the legislature should have provided [a certain remedy]. If the legislature thought that [the remedy] should be provided for, it inadvertently omitted any language expressing that intent. Since we are not a legislative body, it is our settled rule that we cannot and will not read into a statute anything which we may conceive that the legislature has unintentionally left out.

*Leschi Improvement Council v. State Highway Comm'n,* 84

Wn.2d 271, 300, 525 P.2d 774 (1974) (Rosellini, J., dissenting). In this case, the legislature may have intended to prohibit guilty pleas or provide for special sentencing procedures in first degree murder cases. But the legislature did not so provide. Whether that omission in the death penalty scheme of RCW 10.94 was intentional or unintentional, it is a matter for the legislature, and not for this court, to correct.

The need for interpretative restraint is greatly increased in this case because of the subject matter of the court's claimed implied repeal of the defendant's right to plead guilty and claimed provisions for a special sentencing jury if the defendant does plead. The United States Supreme Court has more than once reminded us of the indisputable fact that "death is different," and that this difference must impact on the court's decision making, requiring the utmost solicitousness for the defendant's position. *See Gregg v. Georgia, supra* at 187; *Woodson v. North Carolina,* 428 U.S. 280, 305, 49 L. Ed. 2d 944, 96 S. Ct. 2978 (1976); *Hamilton v. Alabama,* 368 U.S. 52, 54–55, 7 L. Ed. 2d 114, 82 S. Ct. 157 (1961); *Reid v. Covert,* 354 U.S. 1, 77, 1 L. Ed. 2d 1148, 77 S. Ct. 1222 (1951). To force the defendant to face the death penalty on the basis of claimed implied provisions of an otherwise unconstitutional death penalty scheme does not adequately respect that difference. *See also State ex rel. McDonald v. Whatcom County District Court,* 92 Wn.2d 35, 593 P.2d 546 (1979); *State v. Grant,* 89 Wn.2d 678, 685, 575 P.2d 210 (1978); *State v. Arndt,* 87 Wn.2d 374, 385, 553 P.2d 1328 (1976) ("rule of lenity" requires that ambiguous criminal statutes be construed in favor of the defendant).

## III
### Right to Jury Trial Affected by Death Penalty Scheme

As is clear from a reading of RCW 10.94, it contains no limitation on the capital defendant's right to plead guilty and no special sentencing procedure to impose the death

penalty on a pleading defendant. This, in effect, is merely an acknowledgment of the clear language of the provisions of RCW 10.94. When the language of a statute is clear, there is no need for judicial interpretation. *State v. Roth,* 78 Wn.2d 711, 479 P.2d 55 (1971). The defendant can be sentenced to death only after a trial jury returns a verdict of guilty. In addition, the prosecutor cannot prohibit the defendant from pleading guilty by requesting the death penalty merely because the punishment is imposable only by the trial jury which determined guilt. The practical effect of any defendant's assertion of a right to plead guilty and consequent avoidance of the death penalty necessarily raises questions of the constitutionality of Washington's death penalty statute. It is clear that the first degree murder sentencing scheme invalidly penalizes the defendant's constitutional right to trial by jury.

*United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968) invalidated a statute which permitted the imposition of the death penalty only upon conviction following a plea of not guilty and a jury trial. The Supreme Court explained the statutory scheme "needlessly encourages" guilty pleas and thus penalized the exercise of the defendant's right to jury trial.

*Jackson* has been limited in a series of federal and state decisions. The Supreme Court has refused to rule that guilty pleas are *per se* invalid simply because they were induced by fear of the death penalty or entered pursuant to plea bargains averting the death penalty. *See, e.g., Tollett v. Henderson,* 411 U.S. 258, 36 L. Ed. 2d 235, 93 S. Ct. 1602 (1973); *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970); *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785, 90 S. Ct. 1458 (1970). Many state courts, in upholding their statutory death penalty schemes and pleas entered pursuant to them, have relied on the fact that the death penalty may be imposed whether guilt is determined by jury or not. *Prothro v. State,* 370 So. 2d 740, 743 (Ala. Crim. App. 1979) (statute provides for

jury assessment of punishment if defendant pleads guilty); *Commonwealth v. Bhillips,* 475 Pa. 427, 429 n.2, 430 n.3, 380 A.2d 1210 (1977); *State v. Nabozny,* 54 Ohio St. 2d 195, 375 N.E.2d 784, 789 (1978). *See also Lyons v. Howard,* 434 F.2d 632 (6th Cir. 1970) (Kentucky law); *United States ex rel. Madison v. Rundle,* 422 F.2d 49 (3d Cir. 1970) (Pennsylvania law); *Sims v. Eyman,* 405 F.2d 439 (9th Cir. 1969) (Arizona law). Thus, the effect of *Jackson* has been lessened, and case–by–case plea bargaining that averts the death penalty has regularly been allowed.

However, in *Corbitt v. New Jersey,* 439 U.S. 212, 58 L. Ed. 2d 466, 99 S. Ct. 492 (1978), the Supreme Court made clear that *Jackson* still invalidates the inappropriately drafted statutory scheme. In refusing to extend *Jackson* to *Corbitt,* and thus upholding the New Jersey murder punishment scheme, that provides the same maximum life term sentences for all defendants but allows the judge to assess a shorter term when the defendant pleads, the Supreme Court noted *Jackson's* distinguishing characteristics:

> We agree with the New Jersey Supreme Court that there are substantial differences between this case and *Jackson,* and that *Jackson* does not require a reversal of *Corbitt's* conviction. The principal difference is that the pressures to forego trial and to plead to the charge in this case are not what they were in *Jackson.* First, the death penalty, which is "unique in its severity and irrevocability," *Gregg* v. *Georgia,* 428 U.S. 153, 187 [49 L. Ed. 2d 859, 96 S. Ct. 2909] (1976), is not involved here. . . . [I]t is a material fact that under the New Jersey law the maximum penalty for murder is life imprisonment, not death. Furthermore, in *Jackson,* any risk of suffering the maximum penalty could be avoided by pleading guilty. Here, although the punishment when a jury finds a defendant guilty of first–degree murder is life imprisonment, the risk of that punishment is not completely avoided by pleading *non vult* because the judge accepting the plea has the authority to impose a life term. New Jersey does not reserve the maximum punishment for murder for those who insist on a jury trial.

(Footnote omitted.) *Corbitt v. New Jersey, supra* at 217.

Although these differences prevented application of *Jackson* to the facts in *Corbitt,* they mandate *Jackson*'s application to this state's statutory scheme. The instant case demonstrates the constitutional flaw in the death penalty statute. RCW 10.94. The defendant Martin wishes to plead guilty and waive his right to trial by jury because it is the only way under RCW 10.94 that he is assured he can avoid the death penalty. The death penalty statute unnecessarily and by its very nature compels the defendant to plead guilty, and thus is unconstitutional under the holding in *Jackson.*

Washington's statutory scheme "reserve[s] the maximum punishment for those who insist on a jury trial" by allowing the defendant to plead guilty and thus avoid any statutorily prescribed scheme for assessment of the death penalty. As in *Jackson,* if this statute is not struck down, the situation in this state is that "[i]ndividuals forced to defend their lives in proceedings tailor–made for the occasion must do so without the guidance that defendants ordinarily find in a body of procedural and evidentiary rules spelled out in advance of trial." *United States v. Jackson, supra* at 580. The faulty legislation has made the 30–day grace period to request the death penalty an extraordinary weapon in the hands of a prosecutor seeking a deal with a murder defendant. No statutory provision for the death penalty exists when the defendant pleads guilty; none can be implied by us today. We cannot "extend the capital punishment provision . . . in a new and uncharted direction, without the compulsion of a legislative mandate and without the benefit of legislative guidance." *United States v. Jackson, supra* at 581. Washington's death penalty sentencing scheme is unconstitutional.

In sum, the trial court judge should have informed the defendant when he attempted to plead guilty that the maximum punishment for first degree murder on a plea of guilty is life imprisonment with possibility of parole. RCW 9A.32.040(3); 9.95.115. The court should have accepted Martin's guilty plea under CrR 4.2 and sentenced him to

life imprisonment with possibility of parole. Even had he gone to trial, Martin could only have been sentenced to life imprisonment without parole, RCW 9A.32.047, and not death, since RCW 10.94, which sets out the procedure for assessment of the death penalty, is clearly unconstitutional under *Jackson.*

UTTER, C.J., concurs with HOROWITZ, J.

ROSELLINI, J. (dissenting)—To me it is clear that the legislature, in enacting the laws which implement Initiative No. 316, intended that the special sentencing procedure set forth in RCW 10.94 should be invoked in every case where a defendant is charged with first degree murder, provided the prosecutor files a notice of intent to request such a proceeding. I think it is also plain that the legislature did not intend to permit a waiver of jury trial in such cases.

There is no constitutional right to plead guilty in a criminal case. *United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968). The United States Supreme Court, in that case, held that an act of Congress which permitted a defendant to escape the death penalty by pleading guilty (as do the statutes of this state, according to the majority opinions) encouraged the use of such pleas and consequently chilled the exercise of a defendant's right to contest his guilt. A defendant, though innocent, might well choose to plead guilty rather than risk a guilty verdict and the death penalty. The court indicated that the evil could be avoided by legislative provisions which either left the choice of life imprisonment or capital punishment to a jury in every case regardless of how the case was tried, or which required that all capital cases be tried to a jury.[3]

---

[3]The court cited RCW 9.48.030, 10.01.060, 10.49.010 (1956) as illustrative of the first type of legislative action. RCW 9.48.030 was repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010 and by Laws of 1975, 2d Ex. Sess., ch. 38, § 19, effective July 1, 1976. It provided that in every trial for murder in the first degree, the jury should, if it found the defendant guilty, also find a special verdict as to whether or not the death penalty should be imposed. This provision, like the present law, manifested an intent that all capital cases should be tried to a jury.

Under the holding of the United States Supreme Court in *Jackson,* it was within the power of the legislature to require a jury trial in every capital case. It was not within its power to enact a law which would permit a defendant to escape the death penalty by pleading guilty.

The primary goal in construing statutes is to ascertain the legislative intent. In doing so, first consideration is given to the context and subject matter of the statute itself. It should be considered as a whole. If it is susceptible to more than one construction, it should be given that construction which will carry out its objective. *Anderson v. O'Brien,* 84 Wn.2d 64, 524 P.2d 390 (1974); *Miller v. Paul Revere Life Ins. Co.,* 81 Wn.2d 302, 501 P.2d 1063 (1972).

It is evident on the face of the act under scrutiny here that the legislature was striving to draft a law which would meet constitutional requirements. And yet the majority has, by ignoring significant language in that legislation, construed it to have an effect which is invalid. At the same time, assuming the posture of the proverbial ostrich, it would have us believe it is unaware that it has rendered the law unconstitutional.

It is presumed that the legislature was aware of decisions of the United States Supreme Court, as well as this court; and in fact the provisions of RCW 10.94 reflect such an awareness and an endeavor to meet constitutional standards which had been laid down by the high court. The legislature must have been aware, therefore, that it could not validly permit a defendant in an aggravated murder case to escape exposure to the death penalty simply by pleading guilty.

---

Capital punishment was abolished at the time the new criminal code, RCW 9A, was adopted in 1975, but the legislature neglected to delete the provision of RCW 10.01.060 which denies a right to waive jury trial in capital cases. This was evidently an oversight. RCW 10.49.010, enacted in 1881 and never amended, provides for the impaneling of a jury to determine the degree of murder and punishment therefor in every case where the defendant pleads guilty to that crime.

It is the rule, furthermore, that where a statute is open to more than one interpretation, and one would render it invalid while the other would render it constitutional, the latter construction should prevail. *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971).

It was the expressed legislative intent that, in all first degree murder cases where the prosecutor has reason to believe that aggravating circumstances were present, he is entitled to seek the death penalty by requesting a special proceeding. RCW 10.94.010 provides:

> When a defendant is charged with the crime of murder in the first degree as defined in RCW 9A.32.030(1)(a), the prosecuting attorney or the prosecuting attorney's designee shall file a written notice of intention to request a proceeding to determine whether or not the death penalty should be imposed when the prosecution has reason to believe that one or more aggravating circumstances, as set forth in RCW 9A.32.045 as now or hereafter amended, was present and the prosecution intends to prove the presence of such circumstance or circumstances in a special sentencing proceeding under RCW 10.94.020.

There is no language in RCW 10.94.010 restricting its application to cases where the accused has pleaded not guilty. RCW 10.94.020(1) provides that where notice of intention to request the death penalty has been filed, a special sentencing proceeding shall be held if the defendant is found guilty of first degree murder. Subsection (2) provides that the judge shall reconvene the same trial jury to determine the presence of aggravating and mitigating circumstances, and among the matters to be considered is the strength of the evidence of guilt "at the trial." It is true that the legislature in these sections has not expressly declared that all capital cases shall be tried to a jury, but the conclusion is inescapable if the language is given its fair import.

The prosecutor is authorized to request the death penalty in any case where a defendant is charged with murder in the first degree. And where he has made such a request, the same jury which tried the case decides the punishment.

Obviously the legislature intended that all such cases should be tried to a jury, and the trial court readily perceived this intention.

The statutes relating to the death penalty, while not entirely free of ambiguity, reveal a legislative intent that the prosecutor should seek the death penalty in all cases of aggravated murder. The statute regulating the procedure was enacted to implement an initiative of the people and certainly there is nothing in that initiative (now codified in RCW 9A.32.045–.047) which reflects an intent that exposure to the death penalty should depend upon the kind of plea entered.

The majority opinion finds a "right" to plead guilty in CrR 4.2(a). This rule does not purport to specify the cases in which various pleas can be accepted, but merely recognizes the kinds of pleas which are appropriate. It has always existed side by side with RCW 10.01.060, which limits the right to plead guilty in capital cases. In any event, if RCW 10.94 was intended to require a jury trial in every capital case, as I believe it does, being a special and later law, it supersedes the procedural rule of this court, which merely applies to pleas in general. In passing I should say that I find it bizarre that a court rule should be utilized to aid a statutory construction which renders an act unconstitutional.

To the majority it appears that the legislature did not anticipate the possibility that a defendant might plead guilty in a capital case. This view is not supported by the legislative history of the act, cited by amicus and pursued in the specially concurring opinion.[4] That history shows

---

[4]It is with some reluctance that I cite the legislative history, preferring to rest my interpretation upon the language of the statute itself. Amicus curiae thinks that the legislature removed all reference to guilty pleas because it intended to allow such pleas as a means of escaping the death penalty. To me the omission reveals precisely the opposite intent. This divergence illustrates the precarious footing which legislative history offers as a base for interpreting statutes.

The paucity of information available in the legislative journals and printed bills with respect to legislative intent makes any conclusions from such evidence

that the legislation as originally proposed made allowance for such a plea, but this provision was omitted from later revisions. This action, like the language of the statute itself, is consistent with a legislative understanding that such a plea is not appropriate in a case where the death penalty may be imposed.

The majority suggests no legislative purpose which would be served by a law which permits a defendant to escape the death penalty by pleading guilty. It in fact concedes that the legislature never intended to permit such a plea. It is conceivable, though highly improbable, that the legislature might find the public interest so well served by a guilty

---

speculative. Professor C. Sands, in 2A *Sutherland's Statutes and Statutory Construction* § 48.02 (4th ed. 1973), is openly critical of the current tendency to rely upon judicial interpretation of legislative history as a means of discovering legislative intent.

In *United States v. Public Utils. Comm'n*, 345 U.S. 295, 97 L. Ed. 1020, 73 S. Ct. 706 (1953), Justice Robert Jackson (concurring) said, in support of a preference for making decisions "by analysis of the statute instead of by psychoanalysis of Congress":

> When we decide from legislative history, including statements of witnesses at hearings, what Congress probably had in mind, we must put ourselves in the place of a majority of Congressmen and act according to the impression we think this history should have made on them. . . . That process seems to me not interpretation of a statute but creation of a statute.

345 U.S. at 319, cited in C. Sands, *supra* at 186–87.

It is not a proper judicial function to speculate upon and attribute controlling meaning to an unexplained change in legislative drafts that is just as likely to have occurred through happenstance. Seldom is there a reliable explanation for changes in legislative drafts available. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 536 P.2d 157 (1975).

To view an act in the light of other legislation upon the same subject, both past and present, is a valid extrinsic aid to construction. Acts of the legislature express the majority will, attested to in the manner prescribed by the constitution. It may reasonably be presumed that the legislature was aware of the provisions of such enactments. But in view of the fact that hundreds, and sometimes thousands, of bills are introduced in each session of the legislature, it is totally unrealistic to assume that those which are not passed have received the careful consideration of its members.

It should be obvious, therefore, that extreme caution should be used in resorting to legislative history to determine the meaning of statutes. Here, a search of that history has revealed nothing which is contrary to the intent which is reflected in the language used by the legislature. At the same time it has furnished scant illumination of the question before the court.

plea, which spares the public the expense and uncertainty of a trial, that the encouragement of such pleas far outweighs any concern with the penalty to be imposed for the offense committed, no matter how heinous. Had the legislature embraced this notion, it most surely would have expressed in words its intent to exclude those who plead guilty and would not have left that intent to be gleaned by implication from its silence upon the subject.

It is apparent that the legislature gave careful consideration to the mitigating circumstances which might warrant leniency. These are listed in RCW 9A.32.045; and these are the mitigating circumstances which the jury may consider under RCW 10.94.020(4). A plea of guilty is not among them, and in fact they all relate to circumstances existing at the time of the crime.

It is evident that the legislature did not consider a guilty plea to be a circumstance which, because of its mitigating character, should affect the penalty decision. That being the case, it is hardly conceivable that the legislature intended to permit an accused to escape all risk of the extreme penalty by simply pleading guilty. Provision of such a loophole would frustrate the entire purpose of the statute, which is to demand the imposition of this most severe punishment in certain cases and to permit it in no others. The cases where the penalty is demanded are those in which the guilt of the defendant was proven with clear certainty, where there were aggravating circumstances and insufficient mitigating circumstances to warrant leniency, and where the jury can be convinced that the defendant will be a continuing threat to society. RCW 10.94.020.

Were it open to a defendant to escape the death penalty by pleading guilty, it is obvious that the very class for whom the penalty is reserved would be the first to utilize the plea. The construction placed upon the act by the majority is one so unlikely to have been intended by the legislature that it enters the realm of absurdity. It is a well established principle of statutory construction that the law favors a rational and sensible construction. 2A C. Sands,

*Sutherland's Statutes and Statutory Construction* § 45.12 (4th ed. 1973). Had this court been drafting the legislation, it might perhaps have found more explicit language to define its intent. Nevertheless, it is obvious that the legislature intended the sentencing proceedings to apply in all cases where a proper request has been made. The court should be governed by that intent. *Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972).

I would affirm.

HICKS, J., concurs with ROSELLINI, J.