IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33515-1-III |
| Respondent, | ) | (consolidated with |
| | ) | 33516-0-III) |
| v. | ) | |
| | ) | |
| CINDY L. MC MEANS, | ) | UNPUBLISHED OPINION |
| RICKY K. WATLAMET, | ) | |
| | ) | |
| Appellants. | ) | |
| | ) | |
| WILLIAM LAWRENCE, | ) | |
| | ) | |
| Defendant. | ) | |

KORSMO, J. — Cindy Lou McMeans and Ricky Watlamet both were convicted of

first degree unlawful hunting for killing elk on Ms. McMeans' property during a closed

season. Their appeal raises claims of prosecutorial vindictiveness and instructional error.

We affirm the convictions.

FACTS

The facts are essentially undisputed. Ms. McMeans owned land in Kittitas County

through which elk made their annual migration. Ms. McMeans contacted the Department

of Fish and Wildlife (DFW) about damage the elk herd routinely did to her property.

After talking with DFW representatives about available programs to address the herd and

property damage, she declined to enter into a cooperative agreement with DFW. Instead, she expressed an interest in contacting the Yakama tribe about harvesting elk.

She then contacted Ricky Watlamet and asked him for help removing the elk. He and his son went out to the property and examined the situation, without any intent to kill the elk, but they were unable to accomplish anything. A few days later, Mr. Watlamet, a designated hunter for the Yakama Tribe, received a request to provide meat for the funeral of a tribal elder. He then returned to Ms. McMeans' property where he shot and harvested four elk.

In March 2013, neighbors reported to law enforcement that there were numerous dead animals on Ms. McMeans' property. Police investigated and discovered the partial remains of four elk. Because the killings occurred outside of elk season, the State charged Ms. McMeans and Mr. Watlamet with second degree unlawful hunting of big game. On the same day that charges were filed, the Ellensburg Daily Record published a letter to the editor written by Ms. McMeans, in which she criticized DFW management of the elk herd.

On December 3, 2013, the prosecutor communicated a plea bargain to defense counsel, indicating that the misdemeanor charges were for the purposes of plea negotiations and that if the defendant filed any motions, the charges would be refiled in

2

superior court. Report of Proceedings (RP) (May 30, 2014) at 23-24.[1] On December 10, 2013, Mr. Watlamet's counsel filed a motion to dismiss the charges. *Id.* Before receiving the motion that same day, the prosecutor initiated the following series of e-mail communications with defense counsel.

> [Prosecutor:] Just an FYI—the elected wants this moved straight to Superior Court for felonies if you file any motions.
> [Defense:] Oops. Too late.
> [Prosecutor:] I can give you more time to look at the misdemeanor offer before we do any motions, or alternatively I can move it to Superior Court if you want to litigate. No sweat off my back either way—just need to know.
> [Defense:] Welcome to the big leagues.

Clerk's Papers (CP) (33516-0-III) at 38. On the 20th the court dismissed all charges at the prosecutor's request. Felony charges were filed in superior court three months later.

The defense moved to dismiss the charges, asserting that the initial and refiled charges were the result of vindictive prosecution and that the defendants' actions were protected by the constitutional right of free exercise of religion. The trial court denied the vindictive prosecution motion, but deferred judgment on the First Amendment argument. Following the trial testimony, the court declined to give an instruction concerning the religious right defense, but did instruct the jury that a landowner is not guilty of unlawful hunting when the killing is reasonably necessary for the defense of property.

---

[1] This offer was made at the scheduled arraignment. However, no records from the district court proceedings have been submitted here.

The jury rejected the defense and convicted the defendants as charged. They timely appealed to this court.

## ANALYSIS

This appeal reprises the prosecutorial vindictiveness claim and also asserts that the trial court erred in declining to instruct on a defense of free exercise of religion. We address the vindictiveness claim before turning to the instructional error argument.

*Prosecutorial Vindictiveness*

Defendants argue that the decision to refile charges in superior court was the result of prosecutorial vindictiveness. This argument fails both legally and factually. The governing state precedent controls our decision.

Prosecutorial vindictiveness is the filing of increased or more serious charges in response to a defendant's exercise of a constitutional or procedural right. *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006). An action is only vindictive if it is designed to penalize the defendant.[2] *Id.* This doctrine works as a limited check on the otherwise broad discretion enjoyed by the prosecuting attorney to file charges. *State v. Lewis*, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990).

---

[2] Because the essence of vindictiveness is retaliation, the doctrine has not been applied to the prosecutor's initial decision to file charges. *See Korum*, 157 Wn.2d at 655-662 (J.M. Johnson, J., concurring in part). We presume that is why the appellants do not press their trial court argument that the original district court filing was vindictive.

4

The Sentencing Reform Act of 1981, chapter 9.94A RCW (SRA), was designed to prevent judicial intrusion into the prosecutorial decision to file, or not file, charges. *See generally* DAVID BOERNER, SENTENCING IN WASHINGTON § 12.24, at 12-47 (1985). To that end, the SRA provides *guidelines* for prosecutors that do not constitute an enforceable right. *Id.*, at 12-46; RCW 9.94A.401. The prosecutor "should file charges which adequately describe the nature of the defendant's conduct," and should not overcharge a crime in order to obtain a guilty plea. RCW 9.94A.411(2)(a)(i), (ii). However, the prosecutor may charge "other offenses" if they will "significantly enhance" the State's case. RCW 9.94A.411(2)(a)(i)(A).

This approach is one that encourages plea bargains, with the prosecutor filing what he or she believes is the appropriate minimum charge. Instead of filing numerous counts in order to dismiss most, "the initial charges are to be realistic charges which adequately, but not exhaustively, describe the nature of the defendant's conduct, filed with the expectation that they will not be reduced unless the circumstances on which they were based change."[3] Boerner, *supra*, § 12.20, at 12-34.

*Korum*, which controls our decision here, demonstrates the standard SRA approach to plea bargaining. There the defendant initially was charged with 16 felony

---

[3] Washington recognizes a right to plead guilty at arraignment. CrR 4.2; *State v. Martin*, 94 Wn.2d 1, 5, 614 P.2d 164 (1980). Thus, the filing of charges effectively constitutes a plea offer.

counts, but pleaded guilty after extensive negotiations to charges carrying a 20 year sentence. 157 Wn.2d at 620-621. The defendant subsequently withdrew his guilty plea due to an error in the plea process. The prosecutor then filed 32 felony charges that included the original counts and additional charges relating to previously uncharged offenses. *Id.* at 621. Upon being convicted on 30 counts and receiving a sentence of slightly over 100 years, the defendant argued on appeal that he was being punished for exercising his right to withdraw his guilty plea. *Id.* at 621-622, 630-631. Our court concluded that the filing of the additional charges, as promised in the plea bargaining process, did not establish prosecutorial vindictiveness. *Id.* at 627-636.

Similarly here, the defendants' contention that the prosecutor punished them for bringing motions in district court does not even remotely establish vindictiveness. The prosecutor filed gross misdemeanor[4] charges in district court with notice that the case would be litigated in superior court as felony offenses if the defendants did not plead guilty. Even after defense counsel advised the deputy prosecutor that he already had filed motions, the prosecutor indicated that the plea offer still stood. Defense counsel then declined the offer with his "big leagues" comment. At no time did the defendants

---

[4] Felony first degree unlawful hunting of big game requires proof, as charged in this instance, that a hunter killed three or more big game animals within a 24 hour period. RCW 77.15.410(2)(a), (4). Second degree unlawful hunting of big game, a gross misdemeanor, applies to all hunting of big game in violation of hunting regulations. RCW 77.15.410(1), (3).

indicate any desire to plead guilty to any offense. Accordingly, the prosecutor removed the case to superior court on a charge that more accurately reflected the criminal conduct. Under the SRA and *Korum*, this was proper behavior. There was no prosecutorial vindictiveness.

Although *Korum* is dispositive, we also note that the result here is entirely consistent with United States Supreme Court precedent. Closely on point is the decision in *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). There a defendant, initially charged with misdemeanor offenses arising from an assault on an officer and successful flight from the scene, declined to plead guilty and demanded a jury trial. *Id.* at 370-371. The United States Attorney subsequently obtained a felony indictment from a grand jury; the defendant ultimately was convicted by a jury of the felony and one misdemeanor. *Id.* at 371. The United States Supreme Court concluded that there was no prosecutorial vindictiveness from the subsequent felony indictment.

Similar is *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). There the defendant rejected an offer of a five year sentence in exchange for his guilty plea even though he was aware that the prosecutor would seek a habitual criminal indictment if the defendant declined the offer. *Id.* at 358. A grand jury returned the habitual offender indictment and a jury subsequently convicted the defendant. *Id.* at 358-359. The trial court imposed the mandatory sentence of life in prison required by the habitual offender statute. *Id.* at 360. Once again, the court concluded that there was no

7

prosecutorial vindictiveness, noting that plea bargaining generally benefits both sides to a criminal prosecution. *Id.* at 361-363. An offer made to induce a guilty plea does not constitute vindictiveness. *Id.* at 364-365.

The initial decision to file gross misdemeanor offenses in district court did not thereby set a ceiling on potential criminal liability. The prosecutor was free to refile charges in superior court once the defendants declined to plead guilty. The trial court correctly concluded that there was no prosecutorial vindictiveness at work.

*First Amendment Defense Instruction*

Defendants[5] sought a jury instruction that would have provided a defense to the charges if they proved, by a preponderance of the evidence, that (1) they were exercising a sincerely held religious belief and (2) governmental action was a substantial burden on that belief.[6] CP (33516-0-III) at 117. The trial court declined to give the instruction, determining that no evidence had been presented to support the second element of the defense. RP (May 29, 2015) at 7-8. Once again, we agree with the trial court.

---

[5] Although only Mr. Watlamet alleged that he was practicing his religion when he killed the elk, Ms. McMeans also would have benefited from the instruction since the case against her was predicated on accomplice liability.

[6] The instruction also provided the defense could be overcome if the State showed a compelling interest in restricting the exercise of religion and used the least restrictive means of accomplishing that purpose. CP (33516-0-III) at 117.

Individuals are entitled to constitutional protections against government actions that burden sincerely held religious beliefs. U.S. CONST. art. I, § 11. To establish constitutional protection for religious practices, a party must first prove "that their religious convictions are sincere and central to their beliefs." *Backlund v. Bd. of Comm'rs of King County Hosp. Dist. 2*, 106 Wn.2d 632, 639, 724 P.2d 981 (1986). Next, the party must show that the challenged action constitutes a burden on the free exercise of religion. *Munns v. Martin*, 131 Wn.2d 192, 200, 930 P.2d 318 (1997). A facially neutral, even-handedly enforced statute may still violate article I, § 11 if it indirectly burdens the exercise of religion. *Id.* Finally, a challenged action that constitutes a burden may nonetheless be justified where it is narrowly tailored to serve a compelling governmental interest. *Id.*

Long settled standards govern our review of this ruling. Jury instructions are sufficient if they correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968). The trial court also is granted broad discretion in determining the wording and number of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A criminal defendant has a right to have the jury instructed on a defense that is supported by substantial evidence. *State v. Powell*, 150 Wn. App. 139, 154, 206 P.3d 703 (2009).

9

Here, however, appellants did not produce any evidence that the governmental action in question—limiting tribal hunting rights to open, public[7] lands—substantially burdened the free exercise of religion. The defense presented substantial evidence that Mr. Watlamet had sincere religious beliefs and that he used the elk meat for religious purposes. However, he did not provide any evidence that the McMeans property was the only available location to obtain the elk meat. In fact, the record shows that Mr. Watlamet could lawfully hunt elk on State land, Federal land, tribal land, or any open and unclaimed land.[8] The record also indicates that at the time in question there were numerous elk on the reservation as well as elk on state land adjacent to the McMeans property. Mr. Watlamet could have hunted these elk without running afoul of any regulation. He presented no evidence that either these particular elk or this particular place were necessary, preferable, or even convenient, nor has he presented any evidence that hunting the lawfully available elk was in any way burdensome.

In sum, the defense presented no evidence that the hunting regulations at issue burdened any religious practices. Accepting the defense argument would allow

---

[7] The 1855 Treaty with the Yakama Tribe permits hunting on "open and unclaimed lands," but does not extend to hunting on privately owned lands. *See State v. Chambers*, 81 Wn.2d 929, 934-936, 506 P.2d 311 (1973).

[8] In their reply, the appellants assert that submission of this information is inappropriate because a treaty based defense to the crime was not litigated. However, this information was presented below (*see* CP at 120-127) and was relevant to whether Mr. Watlamet's religious exercise was burdened.

individuals to choose to violate a neutral law in the course of religious exercise when the law did not burden religious practices.

The trial court did not err in concluding that the proposed instruction lacked evidentiary support. Because there was no basis for instructing the jury on the defense, the court correctly declined to give the instruction.

The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, A.C.J.

11