[No. 62075-0.   En Banc.   March 16, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH ALLEN FORD, *Petitioner*.

*Richard Tassano* of *Washington Appellate Project,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeffrey B. Baird* and *Theresa Fricke, Senior Deputies,* for respondent.

GUY, J. — At issue is the precise scope of the right to plead guilty, which we have previously found to be established by court rule. *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980). Mr. Ford argues the trial court's decision not to accept his guilty plea violates the right to plead guilty under *Martin*. We affirm the trial court.

The Defendant was charged by information on April 27, 1994, with three counts of first degree murder. At arraignment Mr. Ford, through his counsel, proffered a plea of guilty. The prosecutor immediately moved for a continuance of the arraignment, stating he possessed potentially exculpatory material which needed to be disclosed to the Defendant prior to any plea. *See generally Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). The court continued the arraignment proceeding for a week and did not accept the proffered guilty plea. During the following week, potentially inculpatory evidence was discovered. The State moved to amend the charge to aggravated first degree murder. The trial court granted the motion to amend but stayed it pending review. The Defendant sought discretionary review of the trial court's decision. We accepted certification from the Court of Appeals.

We hold the right to plead guilty under *Martin* does not limit the trial court's independent obligation under the criminal rules to satisfy itself that the plea is factually based and voluntary. We further hold that the continuance and amendment of the information were properly granted.

## BACKGROUND

This case concerns a triple murder that occurred early in the morning of Sunday, April 24, 1994. The Defendant was arrested soon after the murders and charged on Wednesday, April 27, with first degree murder. The Defendant was arraigned on Friday, April 29.

At arraignment, the prosecutor read the charges and then stated: "I'm going to ask your attorney to acknowledge receipt of the information; to waive any further formal reading of that information by me now in court; and to enter a plea in your behalf." Counsel for Mr. Ford then responded: "Your

Honor, we have received a copy of the information. We will waive further formal reading. Your Honor, acting on Mr. Ford's behalf, he has instructed me to indicate guilty, all three counts." The prosecutor immediately requested a continuance of the arraignment on the grounds that the State had not given the Defendant any discovery and that the State was in possession of *Brady* information. The arraignment was continued for a week. During that week, further potentially inculpatory evidence was discovered. At the continued arraignment, the State asked for, and was granted, permission to amend the information to charge aggravated murder. The order amending the information was stayed pending review.

As a threshold matter, the State advances two arguments suggesting no plea was entered and that the right to plead guilty established by *Martin* was therefore not triggered. First, the State argues only those guilty pleas are validly entered which are actually uttered by the defendant in open court. *See* RCW 10.40.170 ("The plea of guilty can only be put in by the defendant himself in open court."). Second, the State contends that entry of the plea was ineffective or incomplete, since (1) no "Statement of Defendant on Plea of Guilty" was submitted, and (2) the court did not conduct the required voluntariness inquiry. *See* CrR 4.2(g); CrR 4.2(d). We find no merit in either argument.

■ First, attorneys may be regarded as the authorized agents of their clients.

> An attorney is impliedly authorized to stipulate to, and waive, procedural matters in order to facilitate a hearing or trial; but, in his capacity as an attorney, he is without authority to waive any substantial right of his client *unless specifically authorized to do so.*

(Italics ours.) *In re Adoption of Coggins*, 13 Wn. App. 736, 739, 537 P.2d 287 (1975). There is no question Mr. Ford authorized his counsel to enter a plea on his behalf. Second, the statement on plea of guilty and the voluntariness inquiry pertain to the court's acceptance of a guilty plea, not the defendant's attempt to enter one.

RIGHT TO PLEAD GUILTY

■■ We turn next to the nature of the right to plead guilty. A defendant has a constitutional right to know the nature and cause of the accusation against him or her. Const. art. 1, § 22 (amend. 10); U.S. Const. amend. 6. There is, however, no constitutional right to enter a guilty plea. *State v. Martin*, 94 Wn.2d at 4; *State v. Bowerman*, 115 Wn.2d 794, 799, 802 P.2d 116 (1990). Nevertheless, a state may confer a right to plead guilty by other means, such as by court rules or statutes. *Martin*, 94 Wn.2d at 4 (citing *North Carolina v. Alford*, 400 U.S. 25, 38 n.11, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970)). In *Martin* we held that a right to plead guilty has been established in Washington by court rule. *Martin*, 94 Wn.2d at 4; CrR 4.2(a) ("A defendant may plead not guilty, not guilty by reason of insanity or guilty."). The precise scope of this right is a question of law. We review issues of law de novo. *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 208, 875 P.2d 1213 (1994).

The defendant in *Martin* asserted a right to plead guilty to a charge of first degree murder in order to avoid imposition of the penalty of death that might follow from a jury trial. *Martin*, 94 Wn.2d at 2. The trial court refused to accept the guilty plea "on the sole ground that the State's right to request the death penalty prevented such an admission of guilt." *Martin*, 94 Wn.2d at 3. This court reversed, noting: "[W]e have been informed of no statute or rule of court which grants a trial court authority to decline a plea of guilty made competently, knowingly, voluntarily, unconditionally, unequivocally and on advice of counsel." *Martin*, 94 Wn.2d at 5. We held that CrR 4.2(a) grounds a right to plead guilty at arraignment "unhampered by a prosecuting attorney's opinions or desires". *Martin*, 94 Wn.2d at 5.

■■ *Martin* nevertheless makes clear that the right to plead guilty is a creature of court rule. *Martin*, 94 Wn.2d at 4-5; *see also North Carolina v. Alford, supra* at 38 n.11 (state may confer right to plead guilty by statute or by other means). Because the right is created by court rules or stat-

utes, its scope can be limited or qualified by them.[1] Mr. Ford argues that once a guilty plea is proffered, *Martin* compels the trial court to determine immediately its voluntariness and to accept the guilty plea if it was made knowingly, intelligently, and voluntarily. However, nothing in *Martin* compels automatic and immediate acceptance of a proffered guilty plea. To the contrary, *Martin* makes the trial court's acceptance of the guilty plea explicitly contingent on the trial court's independent evaluation of voluntariness: "*Assuming the trial court was satisfied* the guilty plea was made competently, knowingly and voluntarily, it should have accepted Martin's plea of guilty to the Brown murder charge." (Italics ours.) *Martin*, 94 Wn.2d at 9. This recognition of an independent obligation of the trial court reflects a court rule. CrR 4.2(d) provides:

> The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

By its terms, the rule creates an obligation on the part of the trial court to be independently satisfied of the voluntariness and factual basis for the plea. The court is part of the proceeding and is not a potted-palm functionary, with only the

---

[1]For example, the Legislature responded to *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980) by restricting the right to plead guilty during the 30-day period when the State may decide to seek the death penalty. Laws of 1981, ch. 138, § 4 (codified at RCW 10.95.040(2)) states in relevant part:

> Except with the consent of the prosecuting attorney, during the period in which the prosecuting attorney may file the notice of special sentencing proceeding, the defendant may not tender a plea of guilty to the charge of aggravated first degree murder nor may the court accept a plea of guilty to the charge of aggravated first degree murder or any lesser included offense.

In the 30-day interim following the defendant's arraignment for aggravated murder, while the State is determining whether it will seek the death penalty, the court may not accept a guilty plea from the defendant. However, this statutory limitation on the court's ability to accept a guilty plea explicitly applies only "during the period in which the prosecuting attorney may file the notice of special sentencing proceeding". RCW 10.95.040(2). The statutory restrictions on accepting guilty pleas apply only once a defendant is charged with aggravated first degree murder. *See* RCW 10.95.040(1).

attorneys having a defined purpose. The trial court continued Mr. Ford's arraignment based in part on a concern whether the proffered guilty plea was knowing, intelligent, and voluntary, as well as concern that the Defendant had a right to review the *Brady* material. We therefore hold the continuance was not a violation of the right to plead guilty established by *Martin*. We next examine whether the continuance was properly granted under the rule governing continuances.

## CONTINUANCE OF ARRAIGNMENT

CrR 3.3(h)(2) sets forth standards governing the granting of continuances. It provides in relevant part: "On motion of the State, the court or a party, the court may continue the case when required in the administration of justice and the defendant will not be *substantially prejudiced in the presentation of the defense*." (Italics ours.) It is axiomatic that ensuring the voluntariness of guilty pleas serves the administration of justice. The State therefore argues that the existence of *Brady* material and the trial court's hesitation as to the voluntariness of the plea warranted a continuation in the interests of justice. The Defendant responds that he and his counsel are best able to assess the voluntariness of his plea and that, in any event, access to *Brady* material can be waived.

While we acknowledge that defendants and their counsel are in a unique position to gauge the voluntariness of a plea, we note once more that CrR 4.2(d) explicitly inserts the independent viewpoint of the trial court into the process of determining the voluntariness and factual basis of a plea. The mere representation by counsel and the defendant that a plea is voluntary does not relieve the trial court of its duty independently to assess the voluntariness and factual basis of the plea. Under the criminal rules, it is the trial court which ultimately must determine whether a guilty plea "is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d). It is the trial court which is commanded not to

"enter a judgment upon a plea of guilty unless it is satis-
fied that there is a factual basis for the plea." CrR 4.2(d).

■ Factors such as the time a defendant has had to
consider and weigh alternatives, the seriousness of the
charge, the degree of apparent uncertainty or vacillation on
the part of the defendant, ulterior pressures to which the
defendant may be subjected, all may give a trial court legit-
imate pause as to the voluntariness of a proffered plea. The
grant or denial of a continuance is generally within the
discretion of the trial court and will not be disturbed absent
a manifest abuse of discretion. *State v. Terrovona*, 105 Wn.2d
632, 651, 716 P.2d 295 (1986). Here, the record reflects the
trial court had reasonable grounds to be concerned about the
full voluntariness of the plea:

> I think that the court, in order to insure that your rights are
> fully protected, will indeed set this matter over for one week so
> that counsel can meet with you; can provide you with all of the
> discovery; and the critical information that the prosecutor has
> in its possession. Mr. Gay is absolutely right. It is a very criti-
> cal charge. I appreciate what you're saying at this time, but
> your attorney needs to be in a position to give you the most ap-
> propriate advice as to what is in your best interests; and I will
> do so.[2]

The trial court elaborated its reasons for continuing the ar-
raigment at the second stage of the arraignment on May 6,
1994:

> I had concerns. If you recall, this case was set to be called
> first on the arraignment calendar. We called the case. Defense
> counsel requested additional time. I went on to other arraign-
> ments. I called the case again. Defense counsel requested ad-
> ditional time. Actually, it was Mr. Madsen gesturing with his
> fingers indicating he wished to have additional time. I knew this
> was a serious case. Had I known there were these discussions
> going on, I would have given you all the time in the world.

> I then called the case again. You came in front of the Court.
> We started with the arraignment process. And again, I was
> extremely concerned at your hesitancy when you spoke briefly

---

[2]The phrase "and I will do so" apparently refers to the prosecutor's request im-
mediately preceding the court's remark: "So I'm suggesting that the court set this
arraignment, and set the plea over, for at least a week in order that I can provide
discovery to Mr. Gay."

to your client. I think I had a responsibility and an obligation to make sure that, if a plea is accepted by this Court and entered in this court, that it must be done knowingly, intelligently, and voluntarily, and with a full understanding of all of the implications and consequences. Counsel's reference to Brady material, though he did not use that terminology, heightened this Court's concerns.

CrR 4.2(d) makes the trial court an independent actor in the process and requires an independent weighing both of the voluntariness of the plea and its factual basis. Here, the trial court was concerned with ensuring the Defendant had a "full understanding of all of the implications and consequences" in light of the seriousness of the charge. Moreover, the trial court was unwilling to affirm the factual basis for the proffered plea when potentially exculpatory evidence had not been seen either by the court or by the Defendant. The court was also "extremely concerned" about the "hesitancy" of the Defendant's counsel after he "spoke briefly" to his client. Given these facts, we cannot conclude the grant of the continuance was a manifest abuse of discretion.

■ There is a second component to the rule governing continuances. "[T]he court may continue the case when . . . the defendant will not be substantially prejudiced in the presentation of the defense." CrR 3.3(h)(2). As the tense of the language indicates, we review whether the defendant was substantially prejudiced in the presentation of the defense *at the time the continuance was granted*. The rule does not require judges to be clairvoyant; neither does the language allow a reviewing court to indulge in Monday-morning quarterbacking. At the time the continuance was granted, there was no reason to suspect the Defendant would be in any way prejudiced in the presentation of the defense by a week's continuance. To the contrary, the trial court at the time had ample reason to believe the weeklong continuance would enhance the presentation of the defense. The events of the week following the continuance cannot be retroactively imported and used to impugn the trial court's decision at the time. We find no manifest abuse of discretion in the trial court's decision to grant the continuance.

## AMENDING THE INFORMATION

■ Based on discoveries made during the continuance, the trial court granted the State's motion to amend the information to charge aggravated murder. CrR 2.1(d) sets forth the standards governing amendment of an information: "The court may permit any information or bill of particulars to be amended at any time before verdict or finding *if substantial rights of the defendant are not prejudiced.*" (Italics ours.) The rule allows the State latitude to amend an information with two limitations. The temporal limitation is not relevant here, so we turn to the question of prejudice. Amending the information is impermissible under the rule if it would prejudice substantial rights of the defendant. We are unable to discern any substantial rights that were prejudiced by the amending of the information. The fact that Mr. Ford proffered a plea in this proceeding cannot be used against him in any subsequent trial. ER 410 provides in pertinent part:

> Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn . . . or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

In addition, we have already determined that the *Martin* right to plead guilty was not violated here. While *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980) stands for the proposition that a right to plead guilty at arraignment exists, neither *Martin* nor any relevant court rule requires that arraignment be completed in a single hearing. Only if the right to plead guilty included a right not to have an arraignment continued would the Defendant's right to plead guilty be prejudiced.

## CONCLUSION

No violation of the *Martin* right to plead guilty occurred, since that right is contingent on the trial court's independent determination of the voluntariness and factual basis of the plea. The continuance was properly granted. At the time it was granted, the Defendant was not substantially prejudiced in the presentation of his defense. Finally, given that no substantial rights of the Defendant were prejudiced, the

amendment of the information was properly allowed. We affirm the trial court and remand for trial.

DURHAM, C.J., DOLLIVER and SMITH, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.

JOHNSON, J. (dissenting) — The majority correctly identifies the holding in *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980), but fails to apply it. By focusing on the continuance instead of the plea, the majority eviscerates the right to plead guilty established by *Martin*. Therefore I dissent.

The majority's analysis of *Martin* is correct, even noting a defendant has the right to plead guilty "unhampered by a prosecuting attorney's opinions or desires". Majority, at 923 (quoting *Martin*, 94 Wn.2d at 5).

The majority then confuses that right by focusing on two irrelevant issues: the judge's obligation to find a guilty plea is knowing, intelligent, and voluntary, and the judge's discretion to continue an arraignment.

As the majority states, CrR 4.2(d) establishes the court's obligation to satisfy itself as to the true voluntariness of a guilty plea. Under the rule, the judge could have rejected the plea if unsatisfied. This did not happen. There was no rejection of the plea due to involuntariness. Instead, the arraignment was continued so the prosecutor could provide the Defendant with additional information. The majority's analysis of a judge's right to reject a plea is irrelevant because the judge never rejected the plea here.

I also agree the judge has the discretion to grant a continuance. However, once the defendant has commenced the process of pleading guilty, the judge must complete the process *without allowing the State to amend the information*. The judge may accept or reject the plea at the original arraignment or at the continued arraignment. Whether the process is interrupted by a continuance is not important. What is important is that the defendant, having properly invoked his or her right to plead guilty, is allowed to do so without second-guessing by the prosecutor.

The timing of the arraignment is within the prosecutor's control. When a prosecuting attorney chooses to arraign a defendant on *first degree murder* charges early in the investigatory process despite conflicting evidence, the prosecutor knows the defendant will be asked to enter a plea. If the defendant pleads guilty, the case is over. If a prosecutor wants to avoid this result, he or she can alter the timing of the arraignment.

The focal point in the analysis of this case occurred during the arraignment. The Defendant was called upon to enter a plea. At that point, the Defendant had two choices: guilty or not guilty. The Defendant attempted to plead guilty as was his right under *Martin*. The majority's resolution, in effect, creates a third option: guilty only if the prosecution agrees. This option was specifically rejected in *Martin*.

UTTER, J., concurs with JOHNSON, J.

Reconsideration denied May 9, 1995.