[No. 17225-2-III. Division Three. July 13, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. JEREMY J. CONWELL, *Petitioner.*

458

SWEENEY, J., dissents by separate opinion.

*Melvin Day Hoit*, for petitioner.

*James Richard Sweetser, Prosecuting Attorney*, and *James Henry Kaufman, Deputy*, for respondent.

KURTZ, A.C.J. — After he shot and killed Ricky Franetich, Jeremy Conwell was charged in district court with the crime of second degree manslaughter. Before he was arraigned, he negotiated a plea agreement with the prosecutor by the terms of which he would be charged in superior court with one count of carrying a concealed weapon and one count of second degree reckless endangerment. He agreed to plead guilty to these two counts in exchange for a prosecutor's recommendation of concurrent 90-day sentences. The superior court judge refused to accept the plea agreement but, nevertheless, arraigned Mr. Conwell on the two gross misdemeanor charges. Without asking Mr. Conwell for his plea, the court entered a plea of "not guilty" for him. The State subsequently was allowed to file an amended information charging first degree manslaughter.

Mr. Conwell was granted discretionary review contending the court erred by: (1) not allowing him to plead guilty as charged by the original information, and (2) allowing the State to breach its plea agreement. We conclude the superior court could reject the plea agreement if it

determined that it did not meet prosecutorial standards and the interests of justice under RCW 9.94A.090. We further conclude the court did not err by not accepting Mr. Conwell's guilty plea to the charges in the original information because it was conditioned upon the plea agreement rejected by the court. Last, we conclude the State could revoke its offer of a plea arrangement because the State was released from its agreement by RCW 9.94A.090 when the court rejected the agreement and because there is no showing that Mr. Conwell detrimentally relied upon the agreement. The judgment of the superior court is affirmed.

## FACTS

On the night of June 26, 1997, a group of young people gathered in a secluded, wooded area of Minnehaha Park to have a party. Jeremy Conwell's girl friend was a part of the group and he tried to get her to leave. One of the individuals attending the party was offended by Mr. Conwell's conduct and struck him. As Mr. Conwell tried to retreat to his truck, he was followed by Mr. Franetich and other members of the party. Mr. Conwell was carrying a gun which he fired several times. Mr. Franetich received a fatal wound.

Mr. Conwell was initially booked into Spokane County Jail on June 26 on the charge of murder in the second degree for the intentional killing of Mr. Franetich. On June 30, the prosecutor filed a complaint in district court charging Mr. Conwell with one count of manslaughter in the second degree.

Over the course of the next several weeks, and before any charges were filed in superior court, Mr. Conwell and the prosecutor negotiated a plea agreement. By the terms of the agreement, the prosecutor agreed to charge Mr. Conwell with one count of carrying a concealed weapon and one count of reckless endangerment in the second degree. Mr. Conwell agreed to plead guilty to the two gross misdemeanors in exchange for a recommendation of 90-day sen-

tences on the counts to run concurrently. These charges were filed on September 24.

Five days later, Mr. Conwell appeared before the superior court to be arraigned on the two misdemeanor charges and to enter his guilty plea pursuant to the plea agreement. He submitted to the court a written statement of defendant on plea of guilty, which the court reviewed with him. The court made appropriate inquiries regarding whether the plea was being made competently, knowingly and voluntarily. Furthermore, Mr. Conwell and the prosecutor made statements to the court which demonstrated that there was a factual basis for the plea.

The court refused to accept Mr. Conwell's guilty plea to the negotiated charges set out in the information. The court expressed its concern that the negotiated charges did not fairly and appropriately reflect Mr. Conwell's conduct. The court stated it did not feel comfortable taking the guilty plea but freed the parties to take the plea arrangement to another judge. At that point, the court observed Mr. Conwell had not yet been arraigned and proceeded to arraign him on the two gross misdemeanor charges. The court did not ask Mr. Conwell how he pleaded, but entered a "not guilty" for him. Neither Mr. Conwell nor the prosecutor objected to this procedure.

On December 11, 1997, the State made a motion to amend the information to one count of manslaughter in the first degree. Mr. Conwell moved to be allowed to plead guilty to the negotiated information originally filed on September 24. A hearing on these motions was held on January 15, 1998. On January 26, the court granted the State's motion to amend the information and denied Mr. Conwell's counter-motion to allow the guilty plea to the original information. Mr. Conwell filed a motion for discretionary review with this court which we granted.

## ANALYSIS

Did the court err by not allowing Mr. Conwell to plead guilty as charged in the original information?

Mr. Conwell contends criminal defendants have a nearly

absolute right to plead guilty at arraignment. As applied to his case, Mr. Conwell argues this means the court lacked authority to refuse his guilty plea on the day of his arraignment. In support of his argument, he states: (1) he was unequivocal in his desire to plead guilty as charged to second degree reckless endangerment and carrying a concealed weapon; (2) he expressed his willingness to admit his factual guilt of the crimes charged; (3) a factual basis for his guilty pleas existed independent of his admissions; (4) he had been fully advised by his attorney of his legal and constitutional rights; (5) he expressed his voluntary desire to waive those rights and enter pleas of guilty; (6) he had been fully advised of the legal consequences of his guilty pleas; (7) he was competent to understand (and in fact understood) his waiver of rights and the consequences of his plea; and (8) with full advice of counsel, he repeatedly expressed his desire to plead guilty. In summary, Mr. Conwell contends the court erred in not allowing him to plead guilty as charged.

█ █ A defendant has a constitutional right to know the nature and cause of the accusation against him or her. CONST. art. I, § 22 (amend. 10); U.S. CONST. amend. VI. There is, however, no constitutional right to enter a guilty plea. *State v. Ford*, 125 Wn.2d 919, 923, 891 P.2d 712 (1995); *State v. Martin*, 94 Wn.2d 1, 4, 614 P.2d 164 (1980). Nevertheless, a state may confer a right to plead guilty by other means, such as by court rules or statutes. A right to plead guilty has been established in Washington by court rule. CrR 4.2(a) ("A defendant may plead not guilty, not guilty by reason of insanity or guilty."); *Ford*, 125 Wn.2d at 923; *Martin*, 94 Wn.2d at 4. The scope of this right is a question of law which is reviewed de novo. *Ford*, 125 Wn.2d at 923.

A defendant's right to plead guilty is explained in *Martin* and *Ford*. In *Martin*, the defendant asserted a right to plead guilty to a charge of first degree murder in order to avoid imposition of the penalty of death that might follow from a jury trial. *Martin*, 94 Wn.2d at 2. The trial court refused to

accept the guilty plea "on the sole ground that the State's right to request the death penalty prevented such an admission of guilt." *Id.* at 3. The Supreme Court reversed, noting: "[W]e have been informed of no statute or rule of court which grants a trial court authority to decline a plea of guilty made competently, knowingly, voluntarily, unconditionally, unequivocally and on advice of counsel." *Id.* at 5. The court held that CrR 4.2(a) grants a right to plead guilty at arraignment "unhampered by a prosecuting attorney's opinions or desires." *Martin*, 94 Wn.2d at 3.

*Martin* was clarified by *Ford*. In *Ford*, the defendant was charged by information with three counts of first degree murder. At Mr. Ford's arraignment, he proffered a plea of guilty. The prosecutor immediately moved for a continuance of the arraignment stating he possessed potentially exculpatory material which he needed to disclose to Mr. Ford prior to any plea. The court continued the arraignment proceeding for a week and did not accept the proffered guilty plea. During the following week, potentially inculpatory evidence was discovered and the State moved to amend the charges to aggravated first degree murder, which the trial court granted.

On appeal, Mr. Ford argued that once his guilty plea was proffered, *Martin* compelled the trial court to determine immediately its voluntariness and to accept the guilty plea if it was made knowingly, intelligently and voluntarily. In response to this argument, the Supreme Court stated the court "is not a potted-palm functionary" and recognized the obligations imposed upon the court by CrR 4.2(d) as part of the plea of guilty proceeding. *Ford,* 125 Wn.2d at 923-24.

 *Martin* and *Ford* make clear that the right to plead guilty is a creature of court rule. *Id.* at 923; *see also North Carolina v. Alford*, 400 U.S. 25, 38 n.11, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (state may confer right to plead guilty by statute or by other means). Because the right is created by court rules or statutes, its scope can be limited or qualified by them.

The applicable court rule and statute are CrR 4.2(d) and RCW 9.94A.090.[1] CrR 4.2(d) provides:

> The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

In addition, RCW 9.94A.090(1) states that "[t]he court, at the time of the plea, shall determine if the agreement is consistent with the interests of justice and with the prosecuting standards." This means the right of the defendant to plead guilty at arraignment is qualified by the court's obligations established by the court rule to determine if the plea is made competently, knowingly, voluntarily and is factually based. Furthermore, it is qualified by the court's right to satisfy itself that the plea arrangement is consistent with the interests of justice and with prosecuting standards.

Here, Mr. Conwell submitted a written statement on plea of guilty. The court made inquiries regarding whether the plea was being made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. There is nothing in this record that would support a court's refusal to accept the plea on those grounds. Additionally, the court made inquiries regarding the factual basis for the plea. The statements provided by Mr. Conwell and the prosecutor established such a factual basis. However, the court found the plea agreement did not adequately address the use of a weapon and the resulting death of a human being.

Although not expressly stated by the court, it is clear the court did not accept the plea because it found that the plea agreement would not be "consistent with the interests of

---

[1]Even though these are gross misdemeanors, RCW 9.94A.090 applies because Mr. Conwell initially was charged with a felony in district court. *See State v. Jones*, 46 Wn. App. 67, 69, 729 P.2d 642 (1986).

justice and with the prosecuting standards." This is specifically authorized by RCW 9.94A.090.

In the event the court rejects the plea agreement for these reasons, the statute provides, "the court shall, on the record, inform the defendant and the prosecutor that they are not bound by the agreement and that the defendant may withdraw the defendant's plea of guilty, if one has been made, and enter a plea of not guilty." RCW 9.94A-.090(1). In this case, the court did not comply with this part of the statute. The court neither informed the parties that they were not bound by the plea agreement nor did the court ask the defendant if the defendant wished to withdraw his plea of guilty.[2]

When the superior court rejected the plea agreement under RCW 9.94A.090, both the prosecution and Mr. Conwell were released from their respective agreements. At that point, when the court proceeded with the arraignment on the two misdemeanor charges, Mr. Conwell had the right under CrR 4.2, *Martin* and *Ford* to enter an unconditional plea of guilty to those charges, without the benefit of the prosecutor's sentencing recommendations. Alternatively, Mr. Conwell had the right to enter a plea of not guilty with the hope and expectation that another judge would accept the plea arrangement.

Here, Mr. Conwell accepted the court's entry of a plea of not guilty without comment or protest. There was time and opportunity for Mr. Conwell to enter an unconditional plea of guilty to the two misdemeanors, but the record is clear that he did not. Instead, he acquiesced to the court's entry of the not guilty plea in order to pursue the benefits of his plea arrangement with the State. *Martin* interpreted the court rule to create a right to enter "a plea of guilty made competently, knowingly, voluntarily, unconditionally, unequivocally and on advice of counsel." *Martin*, 94 Wn.2d at 5. Mr. Conwell's plea does not meet this criteria.

---

[2]There is a distinction to be made between the defendant's offer of a plea of guilty and the court's acceptance of the plea. *See Ford*, 125 Wn.2d at 922. Here, Mr. Conwell made a proffer of a plea of guilty but it was not accepted by the court.

In summary, the court did not err by not allowing Mr. Conwell to plead guilty on the day of his arraignment as charged in the original information. Likewise, the superior court did not err.by denying Mr. Conwell's motion to allow the guilty plea to the original information, which he filed in response to the State's motion to amend the information.

Did the court err by allowing the State to breach the plea agreement and amend the information?

Mr. Conwell contends the court acts in a supervisory role in plea negotiations and not as a participant. He maintains that if the court is not satisfied with the information, it may reject the plea agreement or defer its decision until further information is provided. In this case, he argues the court made no finding that the plea agreement was not in the interests of justice. Mr. Conwell argues he performed his part of the agreement by pleading guilty but the State breached the agreement by amending the original information, even in the absence of new evidence supporting the amendment. Mr. Conwell maintains the trial court committed error when it allowed the amendment.

In *Mabry v. Johnson*, 467 U.S. 504, 507-08, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984), the United States Supreme Court considered whether a defendant has a constitutional right to have a plea bargain offer enforced after it has been accepted by a defendant. Resolving that question negatively, a unanimous court opined: "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." (Footnote omitted.)

"The State can revoke a plea proposal offered to a criminal defendant until such time as the defendant enters a plea or has made some act in detrimental reliance upon the offer." *State v. Bogart*, 57 Wn. App. 353, 356, 788 P.2d 14 (1990). CrR 2.1(d) provides that an information may be amended at any time up to a verdict, provided that amend-

ment does not pose undue prejudice to the defendant's substantial rights. A defendant cannot assert error from the amendment of an information unless he or she can show prejudice. *State v. Collins*, 45 Wn. App. 541, 551, 726 P.2d 491 (1986), *review denied*, 107 Wn.2d 1028 (1987). This court reviews the amendment of an information for abuse of discretion. *State v. Powell*, 34 Wn. App. 791, 793, 664 P.2d 1 (1983), *review denied*, 100 Wn.2d 1035 (1984).

Mr. Conwell makes no showing that he relied on the plea agreement to his detriment or that he was unduly prejudiced by the amendment of the information. Moreover, when the court rejected the plea agreement, it implicitly invoked the provisions of RCW 9.94A.090 which invalidated the plea agreement and released both the defendant and the prosecutor. The court did not abuse its discretion when it granted the State's motion to amend the information.

BROWN, J., concurs.

SWEENEY, J. (dissenting) — The question is whether the superior court had the authority to reject a voluntary and fully informed plea of guilty to two gross misdemeanor charges filed by the State in superior court. It did not. *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980). I therefore respectfully dissent.

This was not an executory plea agreement. It was a completed plea agreement. The appropriate charges were filed; the State made its sentencing recommendation. The court, completely within its authority, rejected the State's recommendation. The court advised Jeremy Conwell of the consequences of a plea of guilty, including the fact that the court was not bound by any agreement. Mr. Conwell nonetheless elected to plead guilty. There was nothing left for the court to do but to accept the plea. The court could not (in effect) require the State to amend the information to reflect the court's notion of the appropriate charge. The discretion to charge is uniquely within the authority of the

executive, here the prosecuting attorney. *State v. Haner*, 95 Wn.2d 858, 863, 631 P.2d 381 (1981).

The majority opinion fully and fairly sets forth the facts, but it should be emphasized that Mr. Conwell persisted with his choice to plead guilty as charged, even after being fully informed by the sentencing judge of the potential consequences of that plea. Report of Proceedings at 31.

"Few cases have considered a criminal defendant's right to plead guilty to the crime with which he is charged." *Martin*, 94 Wn.2d at 12 (Horowitz, J., concurring). Of those few, *Martin* is controlling and demands reversal of the superior court decision.

Mr. Conwell does not have a constitutional right to plead guilty. *Martin*, 94 Wn.2d at 4. But the Supreme Court by court rule, or the Legislature by statute, may grant that right. *State v. Ford*, 125 Wn.2d 919, 923, 891 P.2d 712 (1995). Our Supreme Court has done so. CrR 4.2 gives any defendant the right to plead not guilty, not guilty by reason of insanity, or guilty.

The State mistakenly argues nonetheless that acceptance of the plea is discretionary with the court. The State and the trial court were misled by the unfortunate use of the passive form of the verb in CrR 4.2(f), which renders the rule susceptible to misinterpretation:

> If the defendant pleads guilty pursuant to a plea agreement and the court determines under RCW 9.94A.090 that the agreement is not consistent with (1) the interests of justice or (2) the prosecuting standards set forth in RCW 9.94A.430-.460, the court shall inform the defendant that *the guilty plea may be withdrawn and a plea of not guilty entered.*

CrR 4.2(f) (emphasis added).

The State takes this to mean that the *trial court* may withdraw the plea and enter a plea of not guilty on the defendant's behalf. This is not what RCW 9.94A.090 says. It provides:

> If the court determines [the plea agreement] is not consistent

with the interests of justice and with the prosecuting standards, the court shall, on the record, inform the defendant and the prosecutor that they are not bound by the agreement and that *the defendant may withdraw* the defendant's plea of guilty, if one has been made, and enter a plea of not guilty.

RCW 9.94A.090(1) (emphasis added). Thus, the statute does not permit the trial court to do what it did here.

Neither does the court rule. The defendant has the untrammeled right to enter a plea, subject only to the protections of CrR 4.2(d). *Ford*, 125 Wn.2d at 923-24; *Martin*, 94 Wn.2d at 5. In *Ford*, the trial court was held to have acted properly in declining to accept a guilty plea until it was satisfied it was knowing and intelligent. *Ford*, 125 Wn.2d at 924-25. Once the court is satisfied a guilty plea is made competently, knowingly and voluntarily, it must accept the plea. *Martin*, 94 Wn.2d at 9.

Here, the trial court unambiguously established these elements on the record.

In addition, the court must establish that there is a factual basis for the plea. CrR 4.2(d). The trial court here specifically states in the record that there is "ample evidence in the police reports that I've reviewed to support the charges that are before the Court." Report of Proceedings at 46.

The trial court equated a *plea agreement* with a *guilty plea*. They are not the same.

- A plea agreement is an understanding between the prosecutor and the defendant or the defendant's attorney that the prosecutor will do certain things upon the defendant's entering a plea. RCW 9.94A.080.

- A guilty plea is a method of determining guilt, which may be entered at the defendant's option. CrR 4.2(a).

The plea agreement in this case was that, in exchange for a plea of guilty on the two gross misdemeanor charges, the prosecutor would request concurrent sentences with all jail time suspended except for 90 days with credit for 15

days served, and no additional fines other than the court costs and victim assessments. Restitution might be requested, and two years' probation could be imposed. Report of Proceedings at 29-30.

This agreement did not confer upon Mr. Conwell the right to plead guilty. He already possessed that right as created by court rule, subject only to the court's determination that it is freely and intelligently exercised. CrR 4.2(a), (d); *Martin*, 94 Wn.2d at 5.

The trial court's discretion *with respect to a plea agreement* comes into play only if the court finds a proposed plea agreement is inconsistent with the interests of justice. It may then reject the *agreement* and inform the defendant of the defendant's right to withdraw the *plea*. RCW 9.94A-.090(1). The court can reject the agreement *but not the plea of guilty* offered pursuant to the agreement. The decision as to whether to plead guilty remains that of the defendant. *Martin*, 94 Wn.2d at 5. Professor Boerner agrees.

> The decision as to whether to plead guilty remains the defendant's, assuming of course that the plea of guilty is otherwise valid. Where the plea agreement does not involve the amendment of the information or the dismissal of counts, the decision as to whether to continue with the plea of guilty in the absence of the concessions contained in the plea agreement is the defendant's.

DAVID BOERNER, SENTENCING IN WASHINGTON § 12.25, at 12-50 (1985) (footnote omitted).

Professor Boerner also notes that only where judicial action is required does the court retain any preexisting authority to refuse to execute the agreement, such as amendment of the information to reduce charges or to drop charges. BOERNER, *supra* at 12-50.

His example is instructive on the precise issue before us:

> For example, if the plea agreement is that the prosecutor will recommend a particular sentence within the presumptive sentence range for the crime to which the plea of guilty is being entered, a judicial finding that that agreement is not con-

sistent with the interests of justice or with the prosecuting standards would result in the prosecutor not being bound to make the agreed-upon recommendation, *but it would not prevent the defendant from pleading guilty.*

BOERNER, *supra* at 12-50 (emphasis added).

The State focuses on the fact that the two gross misdemeanor charges originally filed in superior court were the result of plea negotiations. This would be relevant if the plea agreement here came before the court in the form of a motion to amend the charges against Mr. Conwell from second degree manslaughter to the two gross misdemeanor charges. BOERNER, *supra* at 12-50. But it did not. The charging decision had been made—for whatever reason. The State had charged and was prepared to prove that Mr. Conwell had committed the two gross misdemeanors. Mr. Conwell conceded the State's ability to prove those charges and indicated, unequivocally, his desire to plead guilty to them.

But once the State makes the charging decision—for whatever reasons—the court's discretion is constrained. The trial court is expressly precluded by statute from intruding itself in plea agreement discussions: "The court shall not participate in any discussions under this section." RCW 9.94A.080 (plea agreements).

The court can and must assure that the plea is voluntary and that the evidence is sufficient to support the charge. CrR 4.2(d). But that is it. Neither RCW 9.94A.090 nor CrR 4.2 empowers the court to substitute its judgment for the charging decision already made and filed by the prosecutor. Any other interpretation would transfer the charging decisions of the executive branch to the judicial branch.

"Although the State appears to argue to the contrary, we have been informed of no statute or rule of court which grants a trial court authority to decline a plea of guilty made competently, knowingly, voluntarily, unconditionally, unequivocally and on advice of counsel." *State v. Martin,* 94 Wn.2d 1, 5, 614 P.2d 164 (1980). In a concurring opinion, Justice Horowitz makes the point that "adoption of the

State's assertion that it can prevent the defendant from pleading guilty in effect creates a governmental 'right' to jury trial which the law has never recognized." *Martin*, 94 Wn.2d at 12 (Horowitz, J., concurring).

The only procedural difference between *Martin* and this case is minor and not at all relevant to our analysis. Mr. Martin asked the court to rule on the legal consequences of a plea of guilty to aggravated first degree murder. The State interjected that it had 30 days to file a notice of intent to request a death penalty so the court refused to advise Mr. Martin of the consequences of a plea of guilty and, of course, refused to accept a plea because of Mr. Martin's request for advice. So although Mr. Martin stood ready to enter an unconditional plea of guilty (like Mr. Conwell), he entered no plea. *Martin*, 94 Wn.2d at 7.

Procedurally, the facts here are even more compelling. Mr. Conwell did not request an advisory ruling from the court on the consequences of his plea. And the court fully advised Mr. Conwell of the consequences of his plea. After being fully advised of the consequences of his plea, Mr. Conwell persisted in his desire to plead guilty. Report of Proceedings at 31. Like Mr. Martin, Mr. Conwell stood ready to enter an unconditional plea of guilty. *Id.*

The State also relies on *State v. Ford*, 125 Wn.2d 919, 891 P.2d 712 (1995). That case recognizes the Legislature's response to *Martin* by restricting a defendant's right to plead guilty during the 30-day period when the *State may decide to seek the death penalty*. *Ford*, 125 Wn.2d at 924 n.1. That amendment relates only to a capital case—a case not at issue here. It in no way erodes the controlling effect of *Martin* on these facts. Moreover, here, unlike *Ford*, Mr. Conwell completed the required statement on plea of guilty (CrR 4.2(g)) and acknowledged both his responsibility and culpability for the two charged gross misdemeanors. And, unlike *Ford*, the court conducted the necessary plea hearing assuring both the voluntariness of Mr. Conwell's plea and his proper understanding of his rights and obligations. *Ford*, 125 Wn.2d at 922.

The essence of the holding in *Ford* is that the acceptance of a plea of guilty is conditioned only on the court's evaluation of its voluntariness. *Id.* at 924. And, of course, the voluntariness of Mr. Conwell's plea is not at issue here.

Finally, in *Ford*, the State requested a continuance because of concerns over exculpatory material not yet turned over to the defense and the defendant's understanding of the charges. This called into question the voluntariness of the plea. *Id.* at 922. Here, there was no reason to continue the sentencing other than the court's refusal to accept this voluntary, unequivocal plea to the charges as filed. The State here does not suggest that Mr. Conwell's plea was not voluntary. And with good cause, for even a cursory review of the factors outlined in *Ford* leads inescapably to the conclusion that this was a voluntary plea. *See* factors set out in *Ford*, 125 Wn.2d at 926.

*Mabry v. Johnson*[3] is equally inapplicable. There, "[t]he question presented is whether a defendant's acceptance of a prosecutor's proposed plea bargain creates a constitutional right to have the bargain specifically enforced." *Mabry v. Johnson*, 467 U.S. 504, 505, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). The holding is that it does not. That is not the issue before us here. Mr. Conwell seeks to enforce his unconditional right to plead guilty.

The plea agreement here had been completed. The court had fully informed Mr. Conwell of the consequences of that plea. The State's charging decision was not before the court and it therefore had no right to reject Mr. Conwell's offer to plead guilty.

I would reverse.

Review granted at 139 Wn.2d 1015 (2000).

---

[3]467 U.S. 504, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984).